65   301
84   567
65   301
91   160

## J. D. MESSNER ET AL. V. D. C. GIDDINGS ET ALS.

(Case No. 1643)

1. ESTATES OF MINORS—CONSTITUTION OF 1866—JURISDICTION—DISTRICT COURTS—COUNTY COURTS—On April 2, 1869, M. instituted a suit in the district court to divest her children, who were, at the time, minors, of the title to certain real estate in Texas, previously conveyed to them by a deed of gift from her, and to vest the same in W., offering to recompense the minors for their interest in the Texas property by a mortgage, to the extent of its value, upon property in the state of New Jersey, acquired by her from W. subsequently to her deed to them, and in exchange for which she had conveyed the Texas property, at a valuation agreed upon between W. and herself. The proceedings were wholly between M. and W., and a decree was entered in the cause, divesting the children of the title to the Texas property and vesting it in W. The minors, after attaining majority, brought suit for its recovery. *Held:*

(1) That no power exists in any person or tribunal to divest a minor of title to real estate, unless such power be conferred by the law-making department of the state;

(2) That the district court had no jurisdiction of the matter in which it assumed to act, by any power conferred upon it by either the constitution of 1866 or the laws in force at the time. Its judgment granting the relief prayed for was the attempted exercise of an original jurisdiction conferred upon county courts alone, and was void;

(3) That the district court, whether as a court of law or a court of equity, had only such power as the constitution gave it. There is no such power as the inherent power of a court, if by that is meant a power which a court may exercise without a law authorizing it;

(4) When the constitution, in express terms, confers upon one court, and not upon another, jurisdiction over a particular subject-matter, it must be presumed that it was intended that the jurisdiction thus conferred should be exclusive.

2. CASES REVIEWED—Rivers *v.* Durr, 46 Ala. 419; *Ex Parte* Jewett, 16 Ala. 410;

Huger v. Huger, 3 Des. Eq. 18; *In Re* Salisbury, 3 Johns. Ch. 347; Williams v. Harrington, 11 Iredell 620; Custard v. Custard, 25 Tex., (*supra*) reviewed.

3. CASES CITED AND APPROVED—Baker v. Lorillard, 4 Comstock 257; Rogers v. Dill, 6 Hill 416; Forman v. Marsh, 11 N. Y. 551; Faulkner v. Davis, 18 Gratt. 663; Pierce v. Trigg, 10 Leigh 419; Williamson v. Berry, 8 Howard 556; Williams' Case, 3 Bland's Ch. 191, cited and approved.

4. SEMBLE—Should it appear that the minors, after becoming of age, accepted the proceeds of the mortgage directed by the decree to be executed, knowing the facts alleged to have led to its execution, it may be that they would thereby be precluded from now asserting title to the property in controversy.

APPEAL from Washington. Tried below before the Hon. J. B. McFarland.

The opinion states the case.

*Sayles & Bassett*, for appellants, that the district court was without jurisdiction in the suit of McJilton v. Wilson, and its judgment rendered therein was void, cited: Const. of 1886, art. 14, secs. 6, 16; P. D., arts. 1226, 3908, 3916; Rogers v. Kennard, 54 Tex. 30; Const. of United States, amendments arts. 5, 14, sec. 1; Const. of Texas, 1866, art. 1, sec. 16; Withers v. Patterson, 27 Tex. 491-499; Cooley on Const. Lim. 397, 398; Jones v. Perry, 10 Yerg. 59; People v. Platte, 17 Johns. 195; Bradshaw v. Rodgers, 20 Johns. 103; Milam Co. v. Robertson, 47 Tex. 222; Murchison v. White, 54 Tex. 78; French v. Grenet, 57 Tex. 273.

That the want of authority in the district court to render the decree in McJilton v. Wilson may be inquired into collaterally, they cited: Rogers v. Kennard, 54 Tex. 30; Thompson v. Whitman, 18 Wall. 457; Kilbourn v. Thompson, 103 U. S., 198, and authorities therein cited; Pana v. Bowler, 107 U. S., 545; Winston v. Winston, Galveston term, 1882.

*Breedlove & Ewing* and *C. C. Garrett*, for appellees, on the question of jurisdiction, cited: Pas. Dig. art. 1423; Battle v. Carter, 44 Tex. 486; Wright v. Ragland, 18 Tex. 289; Ward v. Lathrop, 11 Tex. 290; Story's Conflict of Laws, secs. 539, 551, et seq.; Const. 1866, art. 4, sec. 6; Pas. Dig., art. 1405; Lane v. Howard, 22 Tex. 7; Gibson v. Moore, 22 Tex. 611.

That the district court having had jurisdiction of the suit of McJilton v. Wilson, its decree rendered therein cannot be impeached or inquired into in a collateral proceeding, they cited: McAnear v. Epperson, 54 Tex. 220; Fitch v. Boyer 51 Tex. 344; Murchison v. White, 54 Tex. 78; Tennell v. Breedlove, 54 Tex. 540; Treadway v. Eastburn, 57 Tex. 209; Crane v. Blum, 56 Tex. 329; Robertson v.

Johnson, 1. Tex. Law Rep. 336; Wilson v. Wright, 1 Tex. Law Rep. 341; Fleming v. Seeligson, 57 Tex. 524; Brockenborough v. Melton, 55 Tex. 493; Walker v. Hunt, Tyler term, 1883.

Counsel for both parties also cited numerous authorities on propositions not discussed in the opinion.

STAYTON, ASSOCIATE JUSTICE.—This action was brought by J. D. Messner, Ella M. Messner, and Willis S. Messner, to recover from the appellees the land described in the petition.   The plaintiffs' title rests upon the following admitted facts:
"1.   On, and prior to, April 7, 1862, the land in controversy in this suit, with the improvements then on the same, was the property of D. Messner and Marietta Messner, his wife, and the same was their community property.
2.   On April 2, 1862, D. Messner died intestate, and his estate was insolvent.
3.   Messner and his wife had three children, who are the plaintiffs in this suit.   The oldest child, J. D. Messner, was born June 25, 1845; Ella M. Messner was born January 24, 1857, and Wm. M. Messner was born August 16, 1860.
4.   At the date of D. Messner's death, the land in controversy was the homestead of Messner and his family.
5.   Mrs. Marietta Messner and the above named children were the sole surviving heirs of D. Messner, deceased.
6.   The widow and children continued to occupy the land in controversy as their homestead until about September 12, 1864, when Mrs. Messner and her children removed to the state of New Jersey, where they have ever since continued to reside.
7.   On September 12, 1864, Mrs. Messner, by her deed of gift of that date, conveyed to her three children, the plaintiffs, all her right, title and interest in the property in controversy.   The deed was duly recorded in the records of Washington county, September 19, 1864."
The plaintiffs proved the value of the improvements and rents of the premises in controversy, but a further statement of the evidence in relation thereto is unnecessary, as the court held that the defendants' title, as hereafter stated, was the superior title.
The defendants claimed title to the premises, under the pleadings and judgment in the cause entitled M. M. McJilton et al. v. John Wilson, No. 3916, on the docket of the district court of Washington county, as follows:

1. Plaintiffs' petition, filed April 2, 1869, as follows:

THE STATE OF TEXAS, } In district court, Spring term, 1869.
COUNTY OF WASHINGTON.

*To the Honorable G. R. Scott, Judge of the Third Judicial District:*

Your petitioner, Marietta McJilton, joined by her husband Wm. T. McJilton, for herself, and as mother and natural guardian of Dagobert Messner, W. M. Messner and Ella Messner, minors, all residents of the county of Union and state of New Jersey, represent unto your honor, that, as the widow and children of D. Messner, deceased, late of Washington county, Texas, they are possessed of a tract of about twenty-eight acres of land near to and adjoining the town of Brenham, which was the homestead of your petitioner and her children, and is the same that was conveyed to D. Messner by A. G. Compton, and was formerly in four lots, and is described in the deed as follows:

[The field notes describe the property claimed by the plaintiffs in this suit, and are omitted as being unnecessary to an understanding of the case.]

That on September 12, 1864, your petitioner, being a widow, and having no means of educating her children, resolved to return to her father in the state of New York, but, being fearful that the proper authorities of the Confederate government would, in the event of her leaving, confiscate her homestead, she made a deed of gift of her interest in the property to her children above named, which is recorded in book T, p. 111, records of Washington county, but is unstamped; that, after her arrival in the north, she traded with her father, John Wilson, of Dutchess county, New York, for one hundred and twenty-six acres of land in the village of Springfield, Union county, New Jersey; that the land was valued, in the trade, at the sum of $22,500; that your petitioner conveyed a house and lot in the city of Newark, New Jersey, for $4,000 of the purchase money; that her mother being old and infirm, and desiring to live with her, she was allowed, in the trade, the sum of $5,000 for taking care of her; that the Brenham property, hereinbefore described, was to be taken at the sum of $7,000, and there was a mortgage on the place of $6,500, which your petitioner had to lift.

Petitioner avers, that, at the date of the trade with her father, the property in New Jersey was really worth the sum of $35,000, and that it is now even more valuable; that the place is finely improved, consisting in part of two good dwelling houses, two good barns that cost at least the sum of $15,000; that the property is five miles from Elizabeth city, and six miles from Newark; that $7,000, the price agreed upon for the Brenham property, is its just and fair value;

that it will be greatly to her advantage and to the advantage of her children to make the trade, but that she has been unable to consummate the matter, in consequence of the deed of gift executed as aforesaid. She therefore prays that John Wilson may be made a party defendant hereto, and that she be permitted to prove the value of each of the places, and the benefits resulting, and likely to result, to her and her children from the trade, if permitted to complete the same. She prays that a decree might be rendered divesting the title to the Brenham property from her children and vesting the same in John Wilson; that in lieu of the property, her children may have a mortgage on the New Jersey property for the sum of $7,000, the price and value of the same, and for such other and further relief as to equity belongs and her case requires.

2. The answer of John Wilson, filed April 22, 1869:

M. M. MCJILTON  
   *v.*  
JOHN WILSON  
   No. 3916.—Suit pending in the district court of Washington county, Spring term, A. D. 1869.

Now, at this term of the court, comes the defendant John Wilson, in person, and accepts service of the petition, waives the necessity of citation and a copy of plaintiff's petition, and, for answer, admits that the allegations of plaintiff are true. He says that he is father of plaintiff, M. M. McJilton, and grandfather of the Messner children; that he believes, fully, that the trade will be greatly to the advantage of the plaintiffs; that he would not have made such a trade, except with his own children and for their benefit.

                JOHN WILSON.

3. Second answer of John Wilson, filed April 23, 1869:

M. M. MCJILTON  
   *v.*  
JOHN WILSON  
   No. 3916.—In the district court.

And now comes the defendant and saith, that, in order to aid the plaintiff in procuring a residence in New Jersey, he agreed to sell the property named in the plaintiff's petition, and take the Brenham property at the price stipulated and named in the petition; that the defendant considers the property in New Jersey worth much more than the price agreed upon; that the defendant is still willing to carry the contract of sale and exchange into effect, notwithstanding the increased value; and, since there are minors interested, defendant asks that the evidence of competent witnesses who are acquainted

with the property in New Jersey and also that here in Texas, be taken, and that legal proceedings be had in order to make the titles valid, respectively.

4. Decree in the cause as follows:

M. M. McJILTON ⎱ 3916.—District court Washington county, state of
   *v.*    ⎰ Texas, Spring term, A. D. 1869, April 23, 1869.
JOHN WILSON

This day came the parties by their attorneys, and this cause coming on to be heard, and a jury being waived, and all matters of fact as well as of law being submitted to the court, and the matters and things being seen by the court and fully understood, it is ordered, adjudged and decreed, that the trade and exchange of property between the parties, as set forth in plaintiff's petition, be allowed and approved; and it appearing to the court, by the evidence adduced, that John Wilson has heretofore conveyed to M. M. McJilton the one hundred and twenty-six acres of land, with its improvements, in the village of Springfield, Union county, New Jersey, and that he holds a mortgage |for the sum of $7,000 on the property, till such time as he can procure title to the Texas property, known as the Messner homestead, near the town of Brenham, it is ordered and decreed, that the mortgage be released and the same is hereby set aside and held for naught, and all the right, title and interest of Marietta M. McJilton, Dagobert Messner, William M. Messner and Ella Messner, in and to about thirty-five acres of land adjoining the town of Brenham, Washington county, Texas, formerly the homestead of D. Messner, deceased, and the same that was conveyed to him by A. G. Compton, * * * [The decree contains a full description of the land, which is omitted in this statement] is divested out of them, the plaintiffs, and the same is hereby vested in him, John Wilson, his heirs and assigns forever. It is further ordered, adjudged and decreed that Marietta M. McJilton and W. T. McJilton, her husband, do make and execute to John Wilson, in trust, for the sole use and benefit of Dagobert Messner, William M. Messner and Ella Messner, minors, a mortgage, in all due form of law in the state of New Jersey, and bearing the legal rate of interest of that state, payable one-third when D. Messner becomes of age, one-third when William M. Messner becomes of age, and one-third when Ella Messner becomes of age or marries. The mortgage to be executed on a tract of land in the township of Springfield, in the county of Union and state of New Jersey. [Here follows a full description of the land, which is omitted in this statement.] The mortgage to be

for the sum of $7,000 lawful money of the United States, and assignable to the legal guardian of Dagobert, Wm. M. and Ella Messner, whenever a legal guardian shall be appointed for them. It is further considered by the court, ordered and decreed that each party pay the costs by them incurred in this behalf, for which execution may issue in behalf of the officers of court.

5. Each of the defendants was in possession of the portions of the premises claimed by them, respectively, over a year before the suit was brought, claiming under the judgment set out in the preceding paragraph by mesne conveyances from John Wilson.

The facts thus appearing, the court below instructed the jury, in effect, that the judgment of April, 23, 1869, divested the appellants of title to the land, and vested title thereto in John Wilson, and there was a finding accordingly.

That the plaintiffs were the owners of the land in controversy, prior to the rendition of the decree of April 23, 1869, there is no question.

The petition filed in the proceedings, in which that decree was entered, recognizes that fact, and cannot be considered even as an adversary proceeding in which Mrs. McJilton was seeking to set aside the deed which she had made to her children, by which all the interest she formerly had in the property was conveyed to them. Her prayer was, that the title to the property in her children, be divested and vested in John Wilson. She valued the entire property at $7,000, which, she alleged, was its fair value, and she asked that her children be secured in that sum by a mortgage on the property in New Jersey, which, the decree shows, had been conveyed to her by John Wilson.

The decree directed the security to be given. The practical effect of the decree would be a sale of the property which the appellants owned. Waiving the consideration of the question whether the plaintiffs in this case, were, in any legal manner, before the court in which that decree was entered, we will examine the character of the proceeding, and make inquiries as to the power of the court to make such a decree.

The proceeding was not one in which rights were asserted by any of the persons whose names appeared as plaintiffs against the person whose name appeared as a defendant, upon which the court, in the ordinary exercise of judicial power, was called upon to pass or to give relief.

It was a proceeding in which, through a decree of the court, Mrs. McJilton was seeking, as was her father, to have the title of minors to real estate divested and vested in one of them, in pursuance of a contract which they had made, but had no power to carry out; and

so, not by reason of any claim which either of these persons had against the minors or their estates.

The proceeding can stand on no other ground, in a jurisdictional point of view than would an application to the district court, by a parent, to sell the real estate of his infant child, with a view to reinvest the proceeds to its advantage.

It may be laid down as a true legal proposition, under our form of government, that no power exists in any person or tribunal to divest a minor of title to real estate, unless such power be conferred by the law-making department of the government. This will include the act of the people in making a constitution, as well as a legislature acting under a constitution, as the department of government entrusted with the power to make laws.

Such a power may be given by the legislature directly, without calling into action the functions of any judicial tribunal, unless there be some constitutional prohibition against the passage of such laws. Cooley Con. Lim. 117-124, and cases cited.

The power to cause such divestiture of title, may be conferred on some tribunal exercising judicial powers conferred by a constitution, or by a legislature. Upon such tribunals is most usually conferred all such power as the law-making department deems proper to confer at all; and examples of authorizations for its exercise otherwise are rare.

The inquiry then arises, whether the law-making power had conferred on the district court for Washington county, the jurisdiction which it assumed to exercise in entering the decree, on which the title of the defendants rests. The constitution of 1866, in so far as could possibly affect the question before us, gave to the several district courts jurisdiction as follows :

"1. Of all suits, complaints, or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to $100, exclusive of interest.

2. Original and appellate jurisdiction and general control over the county court established in each county, for appointing guardians, granting letters testamentary and of administration; for settling the accounts of executors, administrators, and for the transaction of business appertaining to estates.

3. Original jurisdiction and general control over executors, administrators, guardians and minors, under such regulations as may be prescribed by law." Const. 1866, art. 4, sec. 6.

It cannot be claimed that the clause of the constitution first quoted gave such power, for the proceeding was neither a suit, complaint,

nor plea involving a matter of controversy. It was a proceeding, essentially administrative in its character, and not a controversy between party and party, in which adverse claim of right was asserted, such as was evidently contemplated by the constitution. If it is claimed that in the court, as a court of equity, under that clause, the power existed, it must be replied, that the district court, whether as a court of law or a court of equity, had only such power as the constitution gave it. There is no such thing as the inherent power of a court, if, by that, be meant a power which a court may exercise without a law authorizing it. That clause of the constitution empowered district courts to exercise all the power given, whether the procedure necessary to accomplish that purpose be such as pertains to a court of law or a court of equity; but it in no manner conferred upon such courts the power to exercise any and every power, which, at any time, may have been exercised by courts of chancery in England or elsewhere.

Courts of chancery in England, at an early day, may have exercised such a jurisdiction as the district court for Washington county assumed to exercise, but we have no inclination now to consider the ground on which the power was then claimed, for, at the present day, no such power is claimed to exist in a chancery court in England, unless given by act of parliament. Taylor v. Phillips, 2 Vesey, Sen,. 2, 3; Russell v. Russell, 1 Molloy, 525.

Such a power has been asserted in some of the courts of the states of this Union. In *Ex Parte* Jewett, 16 Ala. 410, the power was held to exist when land was held by a trustee for the use of a married woman and her children, who were minors, she consenting, but, in that case, it was admitted that the English authorities did not sustain the ruling.

The same ruling was made in Rivers v. Durr, 46 Ala. 419, but the case was one of sale for partition, which could not otherwise be made. These cases were followed in Goodman v. Winter, 65 Ala. 435, but the facts were such as would probably have required the same disposition of the case on other grounds.

In Huger v. Huger, 3 Des. Eq. 18, the same principle was assumed, but the infant was given his day after majority to show cause against the decree. *In Re* Salisbury, 3 Johns. Ch. 347, the decree only permitted the conversion of timber on a lunatic's land. Williams v. Harrington, 11 Iredell 620, was expressly based on statutes.

The Kentucky cases, frequently cited to sustain such a power, are based on statutes which give it. None of the cases above cited were based on facts similar to those existing in this case. The case of Cus-

tard v. Custard, 25 Tex. Supp. 56, presented a stronger case for relief, but it was held that the relief must be sought in the probate court.

The following authorities deny the existence of such a power in a court of chancery, unless it be given by statute: Baker v. Lorillard, 4 Comstock 257; Rogers v. Dill, 6 Hill 416; Forman v. Marsh, 11 N. Y. 551; Williams' case, 3 Bland's Ch. 191; Faulkner v. Davis, 18 Gratt. 663; Pierce v. Trigg, 10 Leigh 419; Williamson v. Berry, 8 Howard 556; Pomeroy's Eq. Jur., 78, 1309; 2 Leading Cases in Eq., 1504; Wells on Jurisd., 627-639.

The second clause of the constitution referred to bears solely on the jurisdiction of the district courts *over the courts* to which jurisdiction was expressly given by the constitution in probate and like matters, and is illustrated by many decisions made under the constitution of 1845.

The third clause referred to, has not, in terms, direct reference to the *estates* of minors, and the power conferred by it was to be exercised "under such regulations as may be prescribed by law." We are aware of no legislation which could make the original jurisdiction operative in a case like this, if the constitution could be held to apply in such a case. It seems to have been thought in Neuson v. Chrisman, 9 Tex. 115, that such legislation would be necessary before the original jurisdiction of a district court could be made operative in cases contemplated by the constitution of 1845, which contained a similar provision.

It must be presumed when the constitution, in express terms, confers jurisdiction over a particular subject-matter upon one court, and not upon another, that it was intended the jurisdiction conferred should be exclusive.

The constitution of 1866, provides as follows: "The county court shall have jurisdiction  *  *  *  to probate wills, to appoint guardians of minors, idiots, lunatics, and persons *non compos mentis*; to grant letters testamentary and of administration; to settle the accounts of executors, administrators and guardians; *to transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, and persons non compos mentis,* including the settlement, partition and distribution of such estates; and to apprentice minors, under such regulations as may be prescribed by law." Const. 1866, art. 4, sec. 16.

The matter in which the district court for Washington county assumed to act, was, certainly, *business appertaining to the estates of minors, all* of which the constitution provided should be transacted

by the county courts. It was the attempted exercise of an original jurisdiction, which had been conferred on county courts alone. Laws were in force regulating the exercise of the jurisdiction of the county courts, under which a minor's real estate might be sold, P. D.3909; also regulating the removal of a minor's estate from this state to another. P. D. 3916.

In the face of such laws, we cannot hold that the district court for Washington county had jurisdiction to render the decree on which the defendants rely for title ; and its judgment must be held void.

The defendants set up, in bar of this action, that the decree on which they rely was, in all respects, complied with', and that the plaintiffs have taken benefits under it, but there was no evidence bearing upon this question.

If it shall appear that the plaintiffs, after becoming of age, accepted the proceeds of the mortgage directed by the decree to be executed, knowing the facts which are alleged to have led to its execution, it may be that they would thereby be precluded from now asserting title to the property in controversy. There are authorities so holding, but, as this question was not passed upon in the court below, it is not necessary for us now to consider it, or to consider the sufficiency of the defendants' pleadings bearing upon this question.

For the error in the charge of the court, the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 22, 1886.]