BART MOORE ET AL. v. CAROLINE E. BLAGGE ET AL.

No. 444.—Decided June 26, 1897.

Partition—Sale—Jurisdiction—Parties—Collateral Attack.

C. and her two children, G. and F., the latter a minor, sole owners of certain lands, united in 1869 in a petition to the District Court, alleging that a partition was advisible and could only be justly attained by a public sale of the property, and praying for an order for sale of the lands by the sheriff, with permission for each to purchase to the extent of his interest without payment of money, and for "different and general relief." In a suit to recover lands sold under such order from those claiming under the purchases at said sale—Held:

(1)  The proceeding was not "merely an application for the appointment of an agent to sell certain real estate," but essentially a suit for partition, and within the jurisdiction of the District Court. (Pp. 160, 162.)

(2)  This conclusion was not affected by the fact that all the parties were joined as plaintiffs instead of some being made defendants, as is usual. On such an issue each is necessarily antagonistic to the other throughout the entire proceeding, whether they put in motion the machinery of the law as co-plaintiffs or otherwise. (P. 161.)

(3)  The allegation that a just partition could not be effected without a sale, with special prayer therefor, was not binding on the court, which might have disregarded same and proceeded to partition in kind, if such course had been deemed to the best interest of all concerned. (P. 161.)

(4)  Since a minor was interested, it was the duty of the court to inquire into and determine the truth of the allegation before entering any decree thereon, and in this collateral attack the presumption that the court did so is conclusive. Its action in finding the allegation true and granting the special prayer did not disprove its jurisdiction, which depended on the character of the case. and not the action of the court in disposing of same. (P. 161.)

(5)  The prayer for "different and general relief" evidences that the parties did not intend to insist upon a sale as a sine qua non. (P. 161.)

(6)  The District Court prior to the Revised Statutes of 1879, first specifically authorizing such proceeding, had power, as a part of its general equity jurisdiction in partition cases, to order the sale of property for partition, though some of the parties to the proceeding, being under disability, were incapable of consenting (reviewing the legislation and authorities on this question). (Pp. 162 to 166.)

(7)  The action of the court in ordering sale and conveyance of the land without report of sale or order of confirmation, though probably erroneous, did not make the title of the purchaser void on collateral attack. (P. 166.)

(8) A party having capacity to consent to such proceedings and who received a part of the land bid in for her at the sale, the part in controversy having been bid in for another owner, was bound by the proceeding as a verbal partition, and could not avail herself of insufficiency in the description of the land in the partition and order of sale. (P. 166.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

*M. Surratt, John L. Dyer & Wm. W. Evans*, for plaintiff in error. —The court erred in finding, as a matter of law, that the District Court of Galveston County acquired no jurisdiction of the parties or subject matter in the partition proceedings had in said court, and that all the orders, judgments and decrees entered therein and all proceedings had thereunder are void and subject to collateral attack in this suit. Ex parte Towles, 48 Texas, 433; Cannon v. Hemphill, 7 Texas, 184; Grassmeyer v. Beeson, 18 Texas, 764; Rivers v. Durr, 46 Ala., 419; Waugh v. Blomenthal, 28 Mo., 462; Larned v. Renshaw, 37 Mo., 458; Thornton v. Thornton, 27 Mo., 302; Sands v. Indianapolis, 22 Ohio, L. J., 189; Bland v. Fleeman, 29 Fed. Rep., 669; Meyer v. Const. Co., 100 U. S., 457.

The court erred in not finding and rendering judgment for the defendants on the ground that Mrs. Caroline E. Blagge was estopped from asserting the invalidity of said partition proceedings, because the same were procured by her and she received large benefits thereunder, and with full knowledge of all the facts acquiesced therein for nearly or quite twenty years before the instituton of this suit, during which time the defendants herein purchased and paid for the land in good faith, relying on the validity of the partition had under said proceedings, and had, during such acquiescence and before the institution of this suit, in such good faith, made large and valuable improvements on the land sued for, the title to which was acquired through said partition. Rev. Stats., art. 2857, P. D., 4641; Womack v. Womack, 8 Texas, 414; Ryan v. Maxey, 43 Texas, 192; Angier v. Coward, 79 Texas, 553; Dalton v. Rust, 22 Texas, 134; Cannon v. Hemphill, 7 Texas, 184; Henderson v. Terry. 62 Texas, 284; Nichols v. Dibrell, 61 Texas, 541; Kempe v. Pintard, 32 Miss., 324; Freeman, Void Judicial Sales, sec. 50; 2 Pom. Eq., sec. 814; 7 Am. and Eng. Ency. Law, 22.

The proceedings in the District Court of Galveston, if that court was without jurisdiction to decree partition between the parties, when taken in connection with the agreements and acts of the parties thereto and interested therein, establish that which is equivalent to a parol partition of the lands belonging to the estate of Jonas Butler, in which the tract here involved was set apart to George J. Butler. Evans v. Martin, 6 Texas, Civ. App., 336; Aycock v. Kimbrough, 71 Texas, 333; Wardlow v. Miller, 69 Texas, 398; Murrell v. Mandelbaum, 85 Texas, 22.

In a supplemental brief and argument, counsel for defendant in error further cited: Const. 1869, art. 5, sec. 7—took effect Dec. 3, 1869; 68 Texas, 250. Construed to authorize any measure of relief whatever,

whether at law or in equity. 59 Texas, 228; 18 Texas, 753. Was self executing in terms; 60 Texas, 681.

Partition is a recognized subject of general equity jurisprudence, independently of statute. 18 Texas, 753; Adams' Equity, 229, 230, 231, 232; Story's Equity, secs. 646 to 648. Jurisdiction of District Court was general in matters pertaining to estates of decedents and minors: 54 Texas, 83; 49 Texas, 715; 52 Texas, 603; 2 Peters (U. S.), 165.

We submit that every presumption obtains that the court (District Court, Galveston County) had properly acquired authority to act and exercise its jurisdiction in the particular matter, so as to bind all parties before it, including Mrs. Blagge, whose appearance was legally made by her husband and their joint attorneys; jurisdiction in such a case will be conclusively presumed. 24 Texas, 439; 54 Texas, 84; 63 Texas, 38; 40 Texas, 179; 52 Texas, 607.

The District Court of Galveston County having jurisdiction of the subject matter, and of the parties in said ex parte cause, and having assumed to act therein, the decree, however informal or even erroneous, was valid and effective, regardless of the form of the pleadings or other methods adopted to inform the court of the facts and of the relief desired. Such matters go to the form and not to the validity of the action of the court, which cannot be impeached in that regard except by direct appeal. 70 Texas, 744; 65 Texas, 592; 54 Texas, 83; 49 Texas, 715; 52 Texas, 603; Shaw v. Richey, 136, U. S., 547; Thompson v. Tolmie, 2 Pet., 165.

Married women are not exempt from the operation of this rule. 5 Texas, 290; Barrett v. Tilton, 119 U. S., 637.

Under the third assignment of error, as involved in the appeal of this case, calling in question the ex parte proceeding, under the circumstances it was obtained, as operating as a valid parol partition, plaintiff cites the following additional authorities: 60 Texas, 285. And such partition may be made by married women as well as others. 69 Texas, 398; 24 Texas, 439; 16 Texas, 74.

*Fred Carleton,* for defendant in error.—If the District Court had jurisdiction to decree a sale of land for the purpose of partitioning the proceeds thereof, such jurisdiction could not be invoked or called into exercise without a suit, complaint, or plea at law or in equity, presenting a controversy for adjudication of rights by the court, being filed in said court, and the ex parte application to the court for an order of sale and the appointment of an attorney in fact for the parties to make a sale, wherein all the action desired by the court was agreed upon by the parties to the application and expressed therein, was not a suit for partition, or a suit, complaint, or plea of any kind, at law or in equity, presenting a controversy which would call into exercise the jurisdiction of the court to order a sale of real property for the purpose of partitioning its proceeds; and the court in question was as much without jurisdiction to order the sale in question as it would have been if no application

or petition of any kind had been made to it by any one for such action. Messner v. Giddings, 65 Texas, 301; Blagge v. Moore, 6 Texas Civ. App., 359; Fortune v. Killebrew, 86 Texas, 177; Ex parte Towles, 48 Texas, 433; Williamson v. Lane, 52 Texas, 344; Brown v. Wheelock, 75 Texas, 385; Swett v. Bussey, 7 Mass., 503; Wells, Jurisdiction of Courts, secs. 2, 4; Person v. Nesbet, 1 Devereau's Law, 315; 17 Am. Dec., 569; Bompert v. Roderman, 24 Mo., 385; Railway v. Railway, 137 U. S., 48; Lord v. Veaze, 8 How., 251; Gay v. Porpart, 106 U. S., 679.

The District Courts of this State had no jurisdiction to sell real estate for the purpose of partitioning the proceeds thereof in 1869 and 1870, there then being no statute authorizing such sales, and there being no authority at common law or in equity to make such sales, except of a minor's interest, which latter power existed in equity by reason of the special jurisdiction of chancery over minors, a jurisdiction which was in this State conferred on probate courts. Const., 1869, art. 5, sec. 7; Paschal's Digest, vol. 1, arts. 4707 to 4716, inclusive; Freeman, Cotenancy and Partition, secs. 536, 537, 539; Messner v. Giddings, 65 Texas, 301; Pomeroy, Equity Jurisprudence, sec. 1390; Bispham's Principles of Equity, sec. 493; Deloney v. Walker, 9 Porter, 497; Harkins v. Pope, 10 Ala., 499; Wood v. Little, 35 Me., 107; Codman v. Tinkham, 15 Pick., 364.

If the District Court of Galveston County had jurisdiction to decree a sale of the property, the sale was not completed and no title passed without the sale being reported to and confirmed by the court; because the court could not abdicate the judicial function of passing on the fairness of the sale and confirming or rejecting the same by attempting in advance of the sale to delegate judicial power and make the sale complete without confirmation by the court. Not even a right to a confirmation existed in this case, because the property in question was bought in by the attorney for the parties in trust for George Butler, and title was taken in the attorney's name without expressing the trust and without paying for the land, which was not authorized by the decree of sale. Freeman, Co-tenancy and Partition, secs. 544, 545; Rorer, Judicial Sales (2nd ed.), secs. 1, 24, 25, 106 and note; Halleck v. Guy, 9 Cal., 195; Hords v. Burton, 79 Ill., 509; Burden v. Taylor, 27 S. W. Rep., 349; Mebane v. Mebane, 80 N. C., 34; 2 Jones, Mortgages, secs. 1608, 1637.

The sale in question was void as a judicial sale, because it was not authorized by the order of court in that the order did not authorize the making of a sale or title to McLemore or others without consideration upon any parol agreement that he would hold it in trust for others. As appellants claim benefit from the fact, not apparent of record, but proved in the case, that McLemore did not buy the land bought by him for cash, but without consideration, to be sold by him for the heirs, appellants must take the disadvantage of this state of facts which they set up; and accepting this to be the fact the result is that the sale of the

land in controversy to McLemore was in violation of the order of sale and void as a judicial sale, and could not be binding on Mrs. Blagge, a married woman, as an agreement to pass title in this manner, if she agreed to it, which we deny, unless she was guilty of fraud, which would estop her.

The order of sale was void for uncertainty in the description of the land, as the description, "one-fifth of two leagues granted to T. J. Chambers in McLennan County" does not show whether it was an undivided interest which was to be sold or a certain part in severalty. The ambiguity is a patent one, and cannot be cured by evidence not referred to in the order. Davenport v. Chilton, 25 Texas, 518; Norris v. Hunt, 51 Texas, 609; Pfeiffer v. Lindsay, 66 Texas, 123.

If the description, one-fifth of two leagues, be construed to mean an undivided one-fifth of two leagues, an order of sale containing such a description, when the parties to the suit did not own such an interest, but only 640 acres, and that not as an undivided interest in the two leagues, but owned a particular 640 acres set aside to them before the order of sale, did not authorize the sale of said 640 acres, and without the order of the court to support the sale the sale was void. Henry v. Mitchell, 32 Mo., 512; Pfeiffer v. Lindsay, 66 Texas, 123.

The consent by Mrs. Blagge to her attorney at law taking such steps as he saw proper to partition the estate in which she was interested, his application in her name to the court to sell for partition which application failed to give the court any jurisdiction over her estate or over her in regard thereto, the subsequent sales made and procured by McLemore as her attorney, and the receipt by her husband of the consideration obtained by McLemore for the sale of other lands than this tract, and her acquiescence in what was done in this regard with a knowledge of what was done, without concealment or misrepresentation by her or other conduct amounting to actual fraud, and without the proceeds of the sale having gone to release any charge upon her separate property, does not estop her or call for refunding of money as a condition of recovery. Blagge v. Moore, 6 Tex. Civ. App., 359; Berry v. Donley, 26 Texas, 737; Eckhard v. Schlecht, 29 Texas, 130; Fitzgerald v. Turner, 43 Texas, 79; Johnson v. Bryan, 62 Texas, 623; Williams v. Ellingsworth, 75 Texas, 480; Moores v. Linney, 2 Tex. Civ. App., 293, Robert v. Ezell, 32 S. W. Rep., 362.

DENMAN, ASSOCIATE JUSTICE.—At the date of his death, Jonas Butler owned a large landed estate situated in different counties in Texas, among which was the land in controversy situated in McLennan County. He left surviving him his wife, Caroline E. Butler, and two children, George J. and Fannie Butler, the latter being a minor. Said lands were the community property of said Jonas Butler and wife. Caroline E. Butler having subsequently married H. W. Blagge, she, joined by her husband and her said children, filed the following petition in the District Court of Galveston County:

"In the District Court of the State of Texas including the County of Galveston:

To the June Term, 1869.

"To the Hon. Geo. R. Scott, Judge of the Court:

"The petition of Henry W. Blagge and Caroline E. Blagge (late Caroline E. Butler, wife of Jonas Butler, deceased), Geo. J. Butler and Fannie Butler, a minor, by her guardian, Geo. Butler, all residents of the County of Galveston, State of Texas, respectfully show unto your honor:

"1st.    That they are joint owners of the real estate set out in bill of particulars hereto attached and marked Exhibit "A".

"2nd.    That the said Harry W. and Caroline E. Blagge (for the said Caroline E. Blagge) are entitled to one undivided half of the same and the said Geo. J. and Fanny Butler are entitled to the remaining undivided one-half interest thereof.

"3rd.    That the said property is not susceptible of division in kind so as to make an equitable partition of the said estate between the respective parties in interest.

"4th.    That it is advisable and necessary that a partition of the said estate should be made between the said parties in interest and that the only mode by which such an end can be justly attained is by and through a public sale of the same, under the order of your honor.

"The premises considered, therefore, it is asked by all of the said parties in interest that such order be now made by your honor as by which the said lands may be sold on the first Tuesday in November, A. D. 1869, in front of the court house door in the City and County of Galveston, for cash to the highest and best bidder at said sale, after advertisement made of the time, terms and place of said sale for thirty days previous to said sale by publication in one of the newspapers therein published in the City of Galveston, as well as by advertisement after the manner of sales under execution from your Honorable Court.

"And that the orders may issue from the Clerk of your Honorable Court addressed to the Sheriff of the County of Galveston, commanding that such order be carried into effect by and through the said Sheriff.

"That the said sheriff shall make a conveyance of all the right, title and interest in and to said property to the purchaser or purchasers at the sale belonging to the said Harry W. and Caroline E. Blagge and Geo. J. and Fanny Butler.

"And the proceeds of said sale after defraying the costs of this proceeding shall be divided between the said parties in proportion to their respective interests.

"That each and all of said parties in interest shall have the right to bid at said sale to the extent of their respective interest or interests in the aggregate sum of the entire proceeds of sale, and the lands if any bought by them or any of them at said sale within the limit of said monied interest in the entire proceeds of sale shall be conveyed to them

or any of them without the payment of money (to the extent of said interest); provided, nevertheless, that the costs of this proceeding and the commissions of sale shall be paid in money by the said parties so purchasing, as strangers to the record.

"And if any of the said parties in interest shall purchase lands to a greater value than their interest in the entire proceeds of sale, then and in that event such excess shall be paid in money, as other persons at said sale are required to pay.

"It is respectfully urged that the said orders and decrees should be made by your honor and that all things may be done that are necessary and proper to be done to carry out the object of this bill.

"And for different and general relief and as in duty bound, etc.

> "Harry W. and Caroline E. Blagge,
> "Geo. J. Butler and Fanny Butler,
> "By her guardian Geo. Butler,
> "By McLemore & Hume,
> "Attorneys for the parties in interest, as supra."

Exhibit "A" attached to said petition described the various tracts of land, the only description of the one in controversy being as follows: "McLennan County. John S. Sydnor to Jonas Butler one-fifth of two leagues situated where the city of Waco is now built, T. C. Chambers grantee; recorded in Milam County, Book "V," pp. 166 and 167."

On the 5th day of July, 1869, said court in said cause entered the following decree:

"No. 4248.
"Harry W. Blagge, Caroline E. Blagge,
    ."Geo. J. Butler, Fanny Butler,       }   Ex Parte.
    "Geo. J. Butler (her guardian).

"The above entitled and numbered cause coming on to be heard, and it appearing to the court that the prayer of the petition in said cause is made for the best interests of all concerned and that the orders and decrees asked therein are in all things right and proper.

"It is therefore ordered considered and adjudged that the prayer of said petition be and the same is hereby granted, and it is hereby ordered considered and adjudged that the said lands recited in said petition be sold at public auction to the highest bidder, in front of the court house of Galveston County in said city of Galveston, on the 1st Tuesday in November, 1869, between the hours of 10 a. m. and 2 p. m., by the sheriff of Galveston County, after advertisement first being made of the time, terms and place of sale in some newspaper published in the city of Galveston for 30 days previous to the sale day, as well as after advertisement after the manner of sales under execution.

"And it is ordered that any and all of the said parties in interest may bid at said sale to the extent of their respective interest or interests in the entire proceeds of sale for any property offered for sale under this decree, and a conveyance shall be made to such bidder or bidders by

the sheriff without the payment of money (except as to cost and commission) by such bidder or bidders up to the amount of the said interest in the entire proceeds of sale. And after deducting the costs of this proceeding, the proceeds of said sale shall be divided between the said parties as follows:

"One-half to Caroline E. Blagge.

"One-fourth to Geo. J. Butler.

"One-fourth to Fannie Butler.

"And the clerk of the court is hereby instructed and commanded to issue all orders necessary and proper to carry out the decree of the court. And after the sheriff shall have received and paid into court the proceeds of sale of said lands, the clerk of the court is hereby commanded to pay over all sums thus received to the respective parties in interest or their attorneys of record."

On the 17th day of January, 1870, said parties filed in said cause the following paper:

"At this term of the Hon. District Court for Galveston County, came the parties by their attorneys in the above entitled and numbered cause, and state to the Hon. Court that the decree heretofore made under the prayer of the said parties, to-wit, on the 5th day of July, 1869, at the last term of your Hon. Court, was not carried into execution, and the parties therefore ask that the said cause be re-instated on the docket, and that your Hon. Court will grant the order whereby the former decrees in the premises may be executed on the first Tuesday in March next, 1870, in the manner and form directed in the previous decree of your Hon. Court.

"And as in duty bound, etc.

"Harry W. Blagge & Caroline E. Blagge,

"Geo. J. Butler, and Fannie Butler, by

"her guardian Geo. Butler, per

"McLemore & Hume, Att'ys for parties."

On the 17th day of January, 1870, said court in said cause entered the following order:

"In the above entitled and numbered cause decided at the last term of the honorable District Court of the State of Texas for Galveston County in which certain orders were therein made for the sale of lands for the purposes of partition as prayed for by the parties in interest. And it being made known to the court at this January term, 1870, of the said court that the decree of this court heretofore made in this behalf has not been carried into execution, and the parties in interest being present by their attorneys ask that the said order heretofore made be executed on the 1st Tuesday in March next, A. D., 1870, after 20 days notice instead of 30 as heretofore ordered, and the order appearing to the court to be in all things right and proper it is therefore ordered by the court that the said order heretofore made, to-wit on the 5th day of July, A. D., 1869, by the court be executed and in all things carried into effect as therein ordered on the said first Tuesday in

March, A. D., 1870. The said lands to be sold as under said order being as follows, to-wit:" (here follows description of lands same as given in exhibit "A" attached to the original petition.)

The order of sale issued in pursuance of said decree and under which the lands were sold has been lost and the record does not show affirmatively what description of the land in controversy was given therein, but the return of the sheriff shows sale thereof under said order by the following description: "One-fifth of two leagues, 640 acres, McLennan County, T. C. Chambers headright to M. C. McLemore, $3.50 per acre, $3100."

The deed from the sheriff of Galveston County to McLemore in pursuance of said sale is not set out in full in statement of facts, but is described in the following language: "The defendant then introduced the deed from Frank Dirks, Sheriff of Galveston County, Texas, which recites that the same is made under and by virtue of an order of sale issued out of the District Court of Galveston County, in a certain cause No. 4248—Harry W. Blagge, Caroline E. Blagge, Geo. J. Butler and Fannie Butler, minor, by George Butler, guardian, and in pursuance of a decree rendered therein on the 5th day of July, 1869, and a further order on January 17, 1870, which deed conveys the land in controversy to M. C. McLemore for the sum of $3.50 per acre, which deed is dated the first day of March, 1870."

This is a suit in trespass to try title brought in the District Court of McLennan County by said Caroline E. Blagge, joined by her husband H. W. Blagge, Fannie Nichols nee Fannie Butler, joined by her husband M. C. Nichols; and the children of said Geo. J. Butler, who died subsequent to said proceedings in District Court of Galveston County, to recover the land in controversy from plaintiffs in error who claimed the same through mesne conveyances under said McLemore. On the first trial the trial court instructed a verdict for the defendants and rendered judgment accordingly, but its judgment was reversed by the Court of Civil Appeals, Fisher, Chief Justice, dissenting. Blagge v. Moore, 23 S. W. Rep., 467; 26 S. W. Rep., 305. On the second trial the trial court, following the opinion of the Court of Civil Appeals, rendered judgment for the plaintiff Caroline E. Blagge for one half of the land, it being admitted that the other plaintiffs were barred by limitation, and on appeal to the Court of Civil Appeals said judgment having been affirmed, Fisher, Chief Justice, dissenting, plaintiffs in error, defendants below, have brought thecause to this court by writ of error.

The majority of the Court of Civil Appeals held that the District Court of Galveston County "had no jurisdiction, and that the proceedings referred to were not binding on Mrs. Blagge as a judgment," and therefore did not divest her of her title to her one-half of the land in controversy. The correctness of this ruling is challenged by assignment of error in this court.

The position of the majority of the Court of Civil Appeals upon this question is stated in their opinions above cited as follows: "In the pro-

ceedings under consideration, the pleadings which form the basis of jurisdiction were not only ex parte, but they disclosed the utmost harmony among the parties to the supposed litigation. Each conceded all the rights that the others asserted. Nothing was left for the court to decide; they were agreed in every particular, and even the possibility of an issue did not exist. All that was asked of the court was to enter the agreement upon its records, and issue a mandate for its execution. Such being the case, the District Court of Galveston County had no jurisdiction, and the orders made by it are not binding upon Mrs. Blagge. If it be suggested that as Fanny Butler was a minor, it was necessary to have a judicial sale of her interest in the property, otherwise title could not be divested out of her, it may be answered, that the proper court to make such a sale, so as to bind the minor's estate, was the Probate Court in which the guardianship of said estate was pending." And again: "If we could find sufficient reason for holding that the proceeding was a partition suit, we could concur with counsel for appellees in the contention that the court had jurisdiction. But, in our opinion, it was merely an application for the appointment of an agent to sell certain real estate. It asked the court to exercise, independently, certain functions which it had no power to exercise, separate and apart from other proceedings. Because the court may have had the power in a partition suit to order the property sold, it does not follow that such power existed independently of such a suit."

The Constitutions of 1866 and 1869, under which the proceedings in question were had, each provided that "the District Court shall have original jurisdiction  *  *  *  of all suits for the trial of title to land  *  *  *  and of all suits, complaints or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at, or amount to, one hundred dollars, exclusive of interest."

Since the property involved in the proceeding before the District Court of Galveston is not claimed to have been valued at or amounted to less than $100, exclusive of interest, we do not feel called upon in this case to determine which of such clauses conferred jurisdiction upon the District Court to entertain partition proceedings.

If, as was held by the Court of Civil Appeals, the proceeding "was merely an application for the appointment of an agent to sell certain real estate," it would be difficult indeed to find authority in the Constitution for the exercise of such power (Messner v. Giddings, 65 Texas, 301); but we think it was more—that it was essentially a suit for partition, the parties expressing a wish or preference to have the property sold by the sheriff as part of the procedure. The petition alleged that petitioners were joint owners of the property, stating their respective interests, that it was not susceptible of division in kind so as to make an equitable partition, and that it was advisable and necessary that a partition of same "should be made between the said parties in interest," and concluded with a prayer for general relief. If it had contained no more,

there could have been no room for doubt that the facts stated would have been sufficient to have called into exercise the power or jurisdiction of the court to proceed to partition the property in such manner as it might deem proper within the rules of law. This conclusion cannot be affected by the fact that all the parties were joined as plaintiffs, instead of some of them being made defendants, as is usual. While they saw fit to unite in a request that the court exercise the jurisdiction conferred upon it by law, such joinder was of no avail for that purpose, for either party could as a matter of right, without the assent of the others, have invoked the exercise of such jurisdiction. The real question at issue in such cases is whether the portion which may be finally allotted to each is his fair share of the whole. On this issue each is necessarily antagonistic to the other during the entire proceeding, no matter whether they put in motion the machinery of the law as co-plaintiffs or otherwise.

But the petition further alleged "that the only mode by which such end (i. e. the partition) can be justly attained is by and through a public sale of the same, under the order of your honor," and, therefore, it was specially prayed by all the parties that the court order a sale by the sheriff, giving each party the right to bid in any of the lands and have the sheriff convey same to him, without payment of money, to the extent of his interest in the estate.

We are of opinion, that such allegation that a just partition could not be effected without a sale, and the consequent special prayer for an order of sale, was not binding on the court, but upon the hearing it might have disregarded same and proceeded to partition in kind if such course had been deemed to the best interest of all concerned; that since a minor was interested it was the duty of the court to enquire into and determine the truth of the allegation before entering any decree thereon; and that in this collateral attack the presumption that the court did so is conclusive. If upon the hearing the court had found such allegation untrue and proceeded to partition the land in kind it could not have been urged with any degree of plausibility that the proceedings were void for want of jurisdiction. If we are correct in this, it must follow that the court had jurisdiction, although it found such allegation to be true and granted the special prayer; for it would be absurd to make the jurisdiction of the court depend not upon the character of the case, but upon some action of the court in disposing of same.

Again, the petition evidences the fact that the parties did not intend to insist upon a sale as a sine qua non, for after the special prayer the petition closes, "and for different and general relief"; thus requesting the court, in case it should decline to order the sale specially prayed for, to give such "different" relief as the court might deem them entitled to under the law as applied to the facts of the case. This "different relief" must have referred to a partition in kind in case the special prayer was refused.

When we consider the allegations in the petition that petitioners were

joint owners, that the property was not susceptible of division in kind so as to make an equitable partition of same between the owners, that it was "advisable and necessary that a partition of the estate should be made between the parties in interest, and that the only mode by which such an end can be justly attained" is through a sale, taken in connection with the special prayer and the provisions therein allowing each to bid in property, without money, to the extent of his interest in the estate, and the alternative prayer seeking such relief as the parties might be entitled to if the special prayer were refused, we think it clear, as indicated above, that the proceeding was not "merely an application for the appointment of an agent to sell certain real estate," as held by the Court of Civil Appeals, but was essentially a suit for partition, the parties expressing a wish or preference to have the property sold by the sheriff as part of the procedure. ·

It is urged by defendants in error that, though the court had jurisdiction, it was without power to order a sale for partition and therefore the decree is void. The Court of Civil Appeals, having held the court without jurisdiction, did not reach this question and expressed no opinion thereon.

The act of February 5, 1840 (Acts 1839-40, Hartley's Dig., arts. 2617-2620) allowed partition and prescribed a procedure, but made no provision for sale in any case. In 1857, in Grassmeyer v. Beeson, 18 Texas, 754, referring to this statute, this court through Wheeler, J., said: "The giving of the remedy by statute in a court of law has never been deemed to take away, or in any degree to abridge the original and inherent powers and jurisdiction of the court of chancery in respect to the partitioning of estates. The statute prescribes a procedure which parties may adopt if they see proper; but it is not obligatory. Our courts, possessing the powers of courts of chancery, may proceed to administer relief upon the principles of equity, as fully and completely as a court of chancery in England could do, without the aid of the statute. The foundation of the jurisdiction of equity is not in the statute, but in the judicial incompetency of the courts of common law to furnish a plain, complete and adequate remedy; and in complicated cases, the statute would afford a very inadequate and incomplete remedy. But it is usual to provide in the decree, for the commissioners to report; and upon confirmation of their report, to direct conveyances to be made. It is competent for the court to direct the manner of making the partition, and to decree the making of the conveyances, without the necessity of a report and decree of confirmation. The court may, in the first instance direct conveyances to be made in pursuance of the allotments of the commissioners, if that be deemed proper. There can be no doubt that the powers of the court are adequate for this purpose; and if the decree should be erroneous none but a party or privy, or some one whose interest is in some way affected by it, could complain or take advantage of the error."

At its next session the Legislature, evidently intending to leave the

procedure in partition to be regulated by the court according to the rules
of equity, which were held in said opinion to be more adaptable to the
exigencies of particular cases than those prescribed by the statute, re-
pealed all that portion of said statute attempting to prescribe such pro-
cedure.   Acts of 17th Leg., chap. 92, sec. 21, p. 114; Pasch. Ann.
Dig., Vol. 1, art. 4708, note 1066.   Thus the law stood until the adop-
tion of the Revised Statutes of 1879, which again provided a procedure
in such cases, and as a part thereof provided for sale if in the judgment
of the commissioners and the court "a fair and equitable division of the
real estate, or any part thereof, can not be made."   This is the first
provision made by statute in this State for the sale of real property for
partition, and it seems to have been intended only as part of the statu-
tory proceeding there prescribed.   But by article 3490 of said statutes
the original power of courts of equity to partition, as asserted in Grass-
meyer v. Beeson, was recognized and preserved by the declaration that
the provisions thereof should not "preclude partition in any other man-
ner authorized by the rules of equity."   Thus it appears that from the
adoption of the common law as the rule of decision by Act approved
January 20, 1840, to the present time courts of equity have had and exer-
cised the power, independent of any procedure prescribed by statute, to
partition realty according to their own procedure.   Since there has been
no statute expressly conferring upon them the power to sell for partition,
when thus proceeding, the inquiry as to whether it exists is of vital im-
portance in determining the validity of titles deraigned through such
sales.   Though it is generally stated that in England there was no ju-
risdiction in equity, independent of statute, to order a sale for partition,
it is by no means clear that such proposition is supported by the adju-
dicated cases.   It was there settled at an early day that partition was a
matter of right and that the inconvenience or difficulty attending same
was no ground for refusing the relief.   Thus in Turner v. Morgan (8
Ves. Jr., pp. 144, 145 and note, decided in 1807), the bill prayed parti-
tion of a house but did not ask a sale.   The principal question seems to
have been as to whether a court of equity should order a partition in
such case.   Lord Eldon, after much hesitation, appointed commissioners,
holding that the difficulty of partition was no objection in equity, and
after the commission reported he refused to set aside their report, ex-
cepted to on the ground "that they allotted to the plaintiff the whole
stack of chimneys, all the fire places, the only staircase in the house and
all the conveniences in the yard," stating that "he did not know how to
make a better partition for these parties; that he granted the commission
with great reluctance; but was bound by authority; and it must be a
strong case to induce the court to interpose; as the parties ought to
agree to buy and sell."   This case is meagerly reported and is much
cited as authority for the proposition that there is no power in equity
independent of statute to sell for partition, but we do not understand
that question to have been involved, discussed or decided.   The house
seems to have been of such character as not to be easily susceptible of

partition, and the right to proceed in equity under the circumstances was contested; but it was held that the proceeding in equity would lie where the writ of partition would lie at law, the Chancellor saying: "I know no rule, but by considering the commission as due in a case where the writ would lie." As to the remarks of the Chancellor to the effect that it must be a strong case to induce the court to interpose we think they had reference solely to the question as to whether the court would exercise its discretion by setting aside the report of the commissioners. In 1863 in Griffies v. Griffies, 11 Weekly Reporter, 943, the bill being for "partition or sale" of a two room cottage and about four acres of land, the plaintiff requested a sale which defendant resisted and it was said by Kindersley, V. C., that "where one tenant in common refused to consent to a sale he could insist on there being a partition." No authorities are cited and no reasons are given for the ruling and no showing was made as reason for sale except that the value of the property would probably not exceed the costs of partition proceedings. In Davis v. Turvey, 32 Beav. 554, decided in 1863, the suit was for a partition and the parties who were entitled in ninths were desirous in order to save expense that the sale should take place instead of a partition, but one of the parties was an infant and could not consent. Sir John Romily, Master of the Rolls, said: "I think I can do it, considering the smallness of the property and the number of the shares," and entered an order stating "that it is for the benefit of the infant defendant and of the other parties interested that the entirety of the said hereditaments and premises including the one ninth of the said infant therein should be sold. And it is ordered that said hereditaments and premises be sold accordingly." And a similar decree in a similar cause was made by Wood, V. C., in 1863 in Thackeray v. Parker, N. R. Vol. 1, p. 567. In December, 1863, in Hubbard v. Hubbard, 2 Hem. & M., 39, adult plaintiffs requested a sale for partition instead of partition in kind and read the evidence of competent surveyors to show that such sale would be for the benefit of the infant defendant. Wood, V. C., at first doubted whether such an order could be made, but eventually, considering it to the interest of all parties, ordered the sale. The proceedings show that when the decree was brought into the registrar's office to be drawn up it was objected that no such order had ever been or could be made, and it was not ultimately passed until March, 1864, when the order directing the sale was entered. In note (a) to the report of said case it is stated that in Donaldson v. Fairfax, Kindersley, V. C., had in 1861 made a similar order, a feme covert, who was the only party not sui juris, consenting, as far as she might be able to do so, to the sale. Whatever doubt may have existed on account of these decisions was put at rest by the Partition Act in 1868 (31 and 32 Vict. Ch. 40) providing for such sales.

These and other decisions seem to establish the practice in English courts of equity, prior to said statute, to have been, (1) that where all the parties were sui juris, no matter how inconvenient or destructive of

the interests of the parties a partition might be, a sale would not be ordered except by common consent in which case it would be, (2) that where all the parties sui juris consented the sale would be ordered, if the Chancellor deemed it to the best interest of all concerned, notwithstanding the fact of the inability of some of the parties to consent therto on account of infancy, and (3) that if all the parties sui juris consented the sale would be ordered, if deemed for the best interest of all parties, though a feme covert were a party, provided she consented; but in our judgment they fall far short of holding that they were without jurisdiction to order a sale for partition against the consent of one or more of the parties sui juris, if they had seen fit to so far free themselves from the embarassment due to the conservative and almost reverential regard of the English people for titles to realty as to have actually exercised such power.   On the contrary we think that it logically results from the decisions that they had the jurisdiction, but, out of regard to precedent and the sanctity of landed estates, they had refrained from its exercise up to the enactment of said statute.   Had not such statute been passed it is entirely probable that in the conservatively slow development of English jurisprudence such power would have soon been exercised.   If such courts had jurisdiction to order a sale by consent of all parties, they had jurisdiction to do so without such consent, for consent cannot confer jurisdiction.   That jurisdiction did not depend upon the fact that all parties consented, is evident from the fact that they ordered sales where some of the parties were by reason of minority incapable of consent. If as contended by defendant in error such jurisdiction was chargeable to the general jurisdiction of such courts over estates of minors, which did not exist in this State when the proceedings Ex parte Blagge were had, such facts seem to have escaped the observation of learned counsel and courts in said cases, for no reference is made thereto in support of the power so reluctantly exercised.   That jurisdiction to order a sale for partition is not based either upon consent of all parties nor upon the fact that the court had general jurisdiction over estates of minors, is evidenced by the decree in Donaldson v. Fairfax supra, for the feme covert clearly could consent, during the progress of the cause to which she was a party, to any decree which the court had jurisdiction to make, but her consent could give no validity to a decree directing sale of her land made by a court without jurisdiction to enter same.   There is a broad distinction between the questions whether a court will in deference to precedents regulating its procedure, order a sale for partition, and whether if it goes beyond such precedents and orders same its decree will be a nullity when collaterally attacked by a party thereto. Only the first question has, so far as we are advised, been considered by the English courts, but as above indicated we are of opinion that the logical result of their decisions would lead them to answer the second in the negative.

But whatever may be, or may have been, the true limit in this respect of the jurisdiction of the Chancery Court in England, the same

was not fixed by positive law, but was the subject of judicial determination, and was unsettled when our system was inaugurated in 1840, as above indicated. Our courts of equity were therefore called upon to grapple with the question of their jurisdiction to order sales for partition long before many of the decisions above referred to in the English courts were rendered. Seeing that courts of equity derived their procedure largely from the civil law, which had also but recently been the basis of the law of this State, it was but natural for them to turn to that system to aid them in the solution of this question. There they found that it was competent to order a sale for partition, and by analogy thereto we understand it has been the practice in this State from the earliest time to this date for courts of equity to order property sold for partition when found to be incapable of partition in kind without serious injury to the interests of the parties. This we believe to be the correct rule, and our conclusion results in upholding instead of uprooting titles to land based upon a judicious construction by our courts of the extent of their powers acquiesced in by a learned profession for many years.

It is also urged by defendants in error that the proceedings are void because the decree ordered sale of the property and making of the deeds by the sheriff without any report of sale and confirmation by the court being contemplated. We are of opinion that, while the action complained of would probably be error for which a decree would be reversed or set aside in a direct attack, it is not for that reason, under the rule laid down in Grassmeyer v. Beeson, supra, void. In the case before us the parties requested and the court decreed a sale by the sheriff, the decree being so worded as to show that no further action of the court was expected, as was the case in Grassmeyer v. Beeson. We feel bound by that authority.

We are therefore of opinion that the Court of Civil Appeals erred in holding that the District Court of Galveston County "had no jurisdiction and that the proceedings referred to were not binding on Mrs. Blagge as a judgment."

Since the court had jurisdiction of the cause, with power to order the sale for partition, Mrs. Blagge had capacity to agree as shown by her pleadings, which were evidence of such agreement, that the sheriff should deed to each party the lands bid in by him as his portion of the common estate, and since the uncontradicted evidence supports the finding of the court below that the land in controversy was bid in by McLemore for Geo. J. Butler, and other property was bid in by him for Mrs. Blagge and each received the proceeds of the sales of the property so purchased for them, and since the property bid in for Geo. J. Butler was deeded to McLemore by the same description as is given in the petition in this suit, we are of the opinion that Mrs. Blagge, is after so long a time, bound by the setting aside of said property to Geo. J. Butler as a verbal partition, no matter whether the division was equal or not, and therefore we do not deem it necessary to determine whether the

description given in the proceedings prior to the sheriff's deed were sufficient to pass the title at a sheriff's sale under order of court.

The judgments of the trial court and Court of Civil Appeals will therefore be reversed and judgment here rendered that plaintiffs below take nothing by their suit.

*Reversed and rendered for plaintiffs in error.*

Opinion delivered January 28, 1897.

---

ON MOTION FOR REHEARING.

DENMAN, ASSOCIATE JUSTICE.—In this motion for rehearing, defendants in error do not, as we understand, controvert the correctness of the conclusions reached by us in the opinion that the suit in Galveston was one for partition, and that in such proceeding the court had power to order a sale for partition, but they contend that the land in controversy in this cause was not included in that transaction, and that the Court of Civil Appeals found as a fact that there was no parol partition, and hence this court, having no jurisdiction to find such a fact, is bound by their action, and must affirm this judgment, unless the description in the judicial proceedings be sufficient to pass the title.

We are of opinion that this position is not well taken. The finding of fact and the undisputed evidence show that: "It was admitted in open court by counsel for both plaintiffs and defendants that Jonas Butler did own an undivided one-fifth interest in the T. J. Chambers two league grant in McLennan County, Texas, and that in 1859 in partition proceeding between himself and the co-owners of said land, said one-fifth interest in said T. J. Chambers grant, being the six hundred and forty acres in controversy, was set apart to him as his undivided interest therein, and is the same land in controversy herein;" that the same land was conveyed by the sheriff's deed to McLemore; that in the petition for partition it is described: "McLennan County. John S. Sydnor to James Butler, one-fifth of two leagues situated where the City of Waco is now built, T. C. Chambers, grantee; recorded in Milam County, Book V, p. 166 and 167;" that in the sheriff's return, it is described "one-fifth of two leagues, six hundred and forty acres, McLennan County, T. C. Chambers headright to M. C. McLemore;" that McLemore bought for Geo. J. Butler, one of plaintiffs in the partition, in pursuance of the agreement and purpose shown by the proceedings therein, and that none of the parties ever questioned this setting aside of this land to Geo. J. Butler until this suit was filed. The only defect in the description of the very 640 acres in controversy herein, in said partition proceedings, is that it is therein referred to by the description under which Jonas Butler, the ancestor, held it prior to the partition in 1859. Whatever may be said of the sufficiency of this mode of identifying the property

in a judicial sale, there can, we think, be no question that in the friendly partition, a setting aside of the property by the description under which the undivided interest was originally held by Jonas Butler would pass to the party thus receiving it the 640 acres which was allotted to Jonas Butler in the partition of 1859. The estate of Jonas Butler before was the same as that held by him after such partition, the only difference being that his interest was segregated, a conveyance not being necessary to accomplish that result. It would be sacrificing substance to form to hold that the heirs did not intend to include the segregated 640 acres in the partition because they made a mistake in taking the description from the original title under which their ancestor acquired and held it. We think that the uncontradicted evidence in this case shows that a partition of the property was made, and that therein this land was set aside to Geo. J. Butler; nor do we think that the Court of Civil Appeals intended to find the contrary. We understand their position to be that if Mrs. Blagge be not bound by the partition proceedings, and the pleadings therein, then there was no evidence that she took part in any partition. That court first held that those proceedings as to her were nullities, and therefore reached the conclusion that, as to her, there was no participation in the partition shown. We have reached the opposite conclusion, that the proceedings, though irregular, were had in a court of competent jurisdiction, and that they, as a matter of law, evidenced her assent and agreement that the property should be divided in the manner indicated therein; and we think the question as to whether she got in such division her proper share of the property is foreign to any issue in this case. The fairness of a partition is a matter to be tested in some proceeding instituted for that purpose and cannot be questioned in this action of trespass to try title.

The motion will be overruled.

*Motion overruled.*

Opinion delivered June 26, 1897.