## ANDERSON v. BROOKS.

1. Where, upon the trial of the right of property under the statute, it appears that in a suit in chancery between the same parties, certain slaves were adjudged to be liable to satisfy the plaintiff's judgment, the decree will be conclusive between the parties in respect to the subject matter in all other courts ; but if the question of liability to the judgment was not litigated by the pleading, the decree will not conclude the controversy upon it, although the register may have reported he sold the slaves under the decree, and the chancellor confirmed his report.

2. The rigid application of the principle, that the continuance of the vendor of personal property in possession after an absolute sale, is *prima facie* evidence of fraud, will not be enforced where a person other than the creditor purchases goods under a *fieri facias*, and permits the defendant therein to retain the possession for a short time, and for a purpose consistent with fair dealing.

120

Anderson v. Brooks.

3. Where the purchaser of slaves at a sale under a *fieri facias* permits them to remain in the possession of the defendant in execution for a short time, that the wife of the latter may have the benefit of their services, and while thus situated settles them *in trust* for the *separate use of the wife and her children*, such possession by the husband will not make the purchase under the *fi. fa.* fraudulent, so as to subject the slaves to an execution against the husband's estate which was levied after the settlement was executed.

4. A deed conveyed real and personal property to a trustee as a provision for the support and maintenance of the mother (a married woman) and the support and education of her children—declaring that the trustee shall hold and possess the same, *in trust for the sole use, benefit and behoof of the mother and her children, and shall not sell or charge it: Held,* that the deed invested the wife and her children with the beneficial estate, and that the husband had no interest in virtue of his marital rights, which could be subjected to the payment of his debts.

Writ of Error to the Circuit Court of Macon.

THIS was a proceeding under the statute, for the trial of the right of property. On the 15th November, 1842, a writ of *fieri facias* was issued from the circuit court of Macon, on a judgment previously recovered by the plaintiff against Peter C. Harris, which was levied on sundry slaves by the sheriff of that county, and which, on the 2d January, 1843, he returned superseded by an injunction. An *alias fi. fa.* was issued on the 9th May, 1844, and levied on the 24th July, of the same year, on sundry slaves, to which the defendant in error interposed a claim, and entered into bond for the trial of the right of property. The cause thus made was tried by a jury, a verdict returned for the claimant, and judgment thereon rendered. From a bill of exceptions sealed at the instance of the plaintiff in execution, it appears that the claimant gave in evidence the record of a chancery suit lately pending in Macon, wherein the claimant and one Stocks were complainats and the plaintiff and Harris were defendants, the answer of plaintiff, a cross bill filed by the plaintiff against claimant, Harris and Stocks, the answer of the claimant, the proof taken on the cross bill, the decrees of the chancellor, reports of the register, and their confirmation by the chancellor. The plaintiff objected to the admission of this

record, but the court permitted the same to be read, reserving the right to rule thereafter in regard to its effect.

The court charged the jury—1. If the negroes in controversy were not embraced in the chancery proceeding, then ' the chancery record had nothing to do with this case, and the report of the register of the slaves which had been sold by the sheriff, and its subsequent confirmation by the chancellor, was not such an adjudication of the title to these slaves, as would prevent the plaintiff in execution from controverting the plaintiff's title to them. This charge was given under the impression that the action of the register in respect to the slaves sold by the sheriff, was voluntary and unauthorized. 2. If they should find the slaves in controversy, or any of them, to have been embraced in the chancery suit, and sold under the decree rendered therein, and that such sale was confirmed by the chancellor; then the plaintiff being a defendant in the original suit, and complainant in the cross bill was estopped from insisting upon any circumstances of fraud, either in the making of the mortgage, or in the management of the property, before the sale by the register. To this extent, and none other, the jury would regard the record from the court of chancery. The plaintiff excepted to this charge.

The plaintiff's counsel prayed the court to charge the jury, that the proceedings in chancery furnished within themselves no bar to the plaintiff's right of recovery in this action, and that the decree which had been given in evidence, ought not to be considered by them. This charge was given, and in connection therewith the court repeated the second instruction stated above. The plaintiff excepted to the charge as qualified.

Previous to the levy of the plaintiff's execution on the slaves in question, they had been sold, some of them under an execution, and others under the decree in chancery already referred to. At these sales, the claimant and N. H. Clanton were the purchasers, and the slaves were sold as the property of Peter C. Harris. By a deed executed by the claimant and Clanton previous to the levy in the present case, they conveyed the slaves now sought to be condemned to the satisfaction of the plaintiff's execution, to the claimant for the

benefit of Mrs. Narcissa A. Harris, the wife of the Harris mentioned above, and her children, &c. Proof was given as to the possession of the slaves after the purchases of the claimant, and Clanton, and before they executed the deed for the benefit of Mrs. Harris, which it is insisted showed that there was no change of possession.

Upon this branch of the case, the plaintiff prayed the court to charge the jury—1. If, since the sale of the sheriff under execution, the slaves returned to the possession of Harris, or were in his possession at the time the execution in the present case was levied, and Harris is insolvent, then the slaves in that condition must be found liable; unless the continued possession is explained. It was not a sufficient explanation to repel the imputation of unfairness, to prove that the slaves were left for the purpose of waiting on Mrs. Harris. This charge was given with the following explanation, viz: if they found the sales to the claimant and Clanton were fair, then the possession of P. C. Harris will be construed to be the possession of his wife, the beneficiary in the deed executed by the two former. To this charge as qualified, the plaintiff excepted.

2. That the deed executed by the claimant and Clanton to the former, for the benefit of Mrs. Harris and her children, shows such an interest in her husband in the property thereby conveyed, as makes it liable to the satisfaction of the plaintiff's execution. This charge was refused, and the plaintiff again excepted.

J. E. BELSER and N. HARRIS, for the plaintiff in error, made the following points: 1. The chancery record was not admissible evidence; but if it was, the first charge should have been given without qualification, and the qualification annexed lays down the law incorrectly. [8 Ala. Rep. 707; 9 Id. 162, 704; Scales v. Scales, at the present term.] The same objection applies to the ruling in respect to the second charge. [5 Ala. Rep. 531; 7 Ala. Rep. 270.] Prosser v. Henderson, at this term, does not show that the second prayer should have been overruled, or the qualification was correct. The deed under which the claim is attempted to be supported does not exclude the marital rights of Peter C.

Harris, the defendant in execution.    [1 Yeates' Rep. 427;
2 Dev. & Bat. Law Rep. 135; 3 Hump. Rep. 631; 1 Verm.
Rep. 252; 2 Ired. Rep. 238; 6 Sergt. & R. Rep. 466; 2
Dev. Rep. 432; 1 Mad. Rep. 199; 1 Dess. Rep. 491; 4 Dev.
R. 286; 8 Ala. R. 151, 351.]

W. P. CHILTON and McLESTER, for the defendant in error.
The chancery record, in which was litigated and decided the
*bona fides* of the deeds of trust from Peter C. Harris to the
claimant and Stocks, and to the claimant and Clanton, in
which the slaves in question were embraced, was clearly
competent evidence between the parties to that litigation.
The charge in respect to the effect of the decree was quite
as favorable to the plaintiff as he could ask.    It permitted
him to show fraud in the sale by the register, (if it existed,)
although the register's report had been confirmed.    In this
we think an error was committed in favor of the plaintiff, as
the report, after confirmation, was not collaterally impeach-
able.

The court also committed an error in favor of the plain-
tiff, in instructing the jury, that the decree only affected the
title to such of the slaves in controversy as had been sold un-
der its authority; and this although the cross bill of the
plaintiff not only put in issue the *bona fides* of the trust
deed, but required an account of all the property conveyed
by them.    The litigation in chancery drew in question not
only the disposition of the property by the trustees in the
respective deeds, but also by the sheriff under liens which
overreached these deeds.    We repeat then, that in permit-
ting the plaintiff to go behind the confirmed report, an error
was committed in his favor, of which he cannot com-
plain.

If the sale to the claimant and Clanton was fair, it was clear-
ly competent for them to permit the slaves to remain on the
plantation where they were when they purchased, to wait
on Mrs. Harris; and the ruling on this point was clearly cor-
rect.

The deed from the claimant and Clanton, for the benefit
of Mrs. Harris and her children, did not invest Peter C. Har-

ris with any interest which was the subject of execution. It gave to the wife a separate estate.

COLLIER, C. J.—We can conceive of no objection to the admission of the record of the cause in chancery under the instructions which were given to the jury as to its effect. The court, it seems to us, limited its influence quite as much as the plaintiff could have required, when it charged the jury, that although he was a defendant in one bill and a complainant in the cross suit, yet if the liability of the slaves in question to the plaintiff's judgment was not litigated by the pleadings, he was not concluded; although the register reported he had sold them under the decree, and the chancellor confirmed the report. If the liability of the identical property had been controverted in chancery and adjudged against the plaintiff, surely a decree there rendered upon a question which arose in judgment, should be definitive of the rights of the parties in all courts, in respect to the same matter. The circuit court thus laid down the law, and decided nothing more in regard to the proceedings in equity.

We have repeatedly held in conformity to the principle of Kidd v. Rawlinson, 2 Bos. & P. Rep. 59, that, where a person not being the creditor purchases goods under a *fieri facias*, and permits the defendant therein to retain the possession for a short time, or for a purpose consistent with fair dealing, the purchase shall not be adjudged fraudulent, and the property subject to the debts of the party remaining in possession. The *notoriety* and publicity of such sales distinguish them from ordinary transactions between buyer and seller, and prevent the rigid application of the principle that the continuance of the vendor in possession after an absolute sale, is *prima facie* evidence of fraud. [See 2 Stark. Ev. 617-619, and cases cited in notes.] If the possession of the defendant in execution should continue for an unreasonable length of time, perhaps the inference might be indulged, either that the purchase was made with the defendant's money, or that the purchaser was reimbursed the money he advanced.

In the present case, the slaves returned to the possession of the defendant in execution after they were purchased by the claimant and Clanton; and after remaining there a short

Anderson v. Brooks.

time subject to their control, were settled upon the claimant, in trust for Mrs. Harris, the wife of the defendant in execution, and her children, &c. before the plaintiff's *fi. fa.* was levied.   A possession under such circumstances did not prejudice the right of the purchasers under the execution and decree, and consequently cannot impair the title which the claimant has interposed as a trustee.   If it were necessary to show an excuse for permitting it, in order to repel the imputation of fraud, we should think it would be enough to prove that the possession was left unchanged because the purchasers intended Mrs. Harris to have the benefit of the services of the slaves.   The court then ruled correctly in deciding that upon this branch of the case, the important inquiry was, whether the claimant and Clanton were *bona fide* purchasers at the sale, under the execution and decree.

The deed under which the defendant in error has interposed a claim as the trustee of Mrs. Harris and her children, declares that it is the purpose of the donors to secure to the *cestuis que trust* the slaves in question, with other property, as a provision for the support and maintenance of the mother, and the support and education of her children.   It is provided that the trustee shall hold the property conveyed, real and personal, in trust to effect that object; and that he shall only hold and possess the same in trust "for the sole use, benefit and behoof of the said Narcissa A. and her children; and these presents are made upon this further condition, that the said Hooks, trustee as aforesaid, shall not sell or dispose of said property, or any part thereof; but the intention of this trust is, that the said property is to be held by said Hooks, trustee as aforesaid, and managed by him so as to afford a fund out of the property arising therefrom, for the maintenance and education of the said Narcissa A. and her children; but the object is not to empower said Hooks, trustee as aforesaid, to sell and charge said property."   This deed is certainly much more verbose than is necessary to express the meaning of the donors, but it explicitly declares that the gift is for the *sole use, benefit and behoof* of Mrs. H. and her children; and this declaration, so far from being weakened by what precedes or follows, is really strengthened.   The authorities all show that the terms employed invest the wife

and her children with the beneficial estate, independent of the marital rights of her husband; and that the latter has no interest which can be subjected to the payment of his debts. They are furnished by our own reports, and we need not stop to cite them. The judgment of the circuit court is consequently affirmed.