CORINNE MONTAGUE *et.al. v.* ADYNE BUCHANAN.

(*Nashville.*   December Term, 1918.)

1. **HUSBAND AND WIFE.** Wife's separate estate. Property conveyed to wife.

A warranty deed to a married daughter, and the heirs of her body, "to have and to hold . . . to the only proper use and behalf of her '. . . and her heirs and assigns forever," did not create in her a separate estate, and she could not convey a half interest therein to her husband. (*Post, pp.* 436, 437.)

Cases cited and approved:  Travis v. Sitz, 135 Tenn., 157;  Gray v. Robb, 51 Tenn., 74.

Case cited and distinguished:  Houston v. Embry, 33 Tenn., 480.

2. **HUSBAND AND WIFE.** Contracts and conveyances between husband and wife. Improvements on wife's real estate.

A husband cannot recover for improvements made on his wife's lots, not her separate property, pursuant to contract by which his wife conveyed to him a one-half interest in such lots;  such contract being void, and therefore incapable of creating a lien in favor of the husband upon her land. (*Post, pp.* 437-439.)

Cases cited and distinguished:  O'Malley v. Coughlin, 3 Tenn. Ch., 431;  Sexton v. Alberti, 78 Tenn., 452.

---

FROM WAYNE.

---

Appeal from the Chancery Court of Wayne County.— DOUGLAS WIKLE, Chancellor.

ESLICK & ESLICK and HAGGARD & HAGGARD, for appellants.

SIMS & TURMAN and E. W. Ross, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is an ejectment suit to recover two lots in the town of Waynesboro, Tenn.

The complainants are the sisters and heirs at law of Mrs. Ella A. Buchanan, who died intestate at her home in Waynesboro in the year 1913.

On January 1, 1872, A. T. Hassel executed to his daughter, Mrs. Ella A. Buchanan, a deed to said two lots; said deed being in words and figures following, to wit:

"For the love and affection I have for my daughter, Ella Ann Buchanan, I hereby give, transfer, and convey to her and the heirs of her body, the following described town lots: [Here follows description.]

"To have and to hold the above-described town lots, with the appurtenances thereto belonging, to the only proper use and behalf of her, the said Ella Ann Buchanan, I hereby bind myself, my heirs, excutors, and administrators, to warrant and forever defend the title to the above-described town lots and each of them against the lawful claims of all and every person or persons whomsoever, unto the said Ella Ann Buchanan, and her said heirs and assigns forever."

At the time of this conveyance Ella A. Buchanan was the wife of the defendant, Dr. C. Buchanan, and they lived together as husband and wife until her death.

Evidently proceeding upon the theory that she held said two lots as a separate estate, under the terms of the deed executed to her by her father in 1872, Mrs. Buchanan entered into a contract with her husband in

141 Tenn.—28.

1893, by which she was to convey to him a one-half interest in said two lots, in consideration for which her husband, Dr. C. Buchanan, was to erect a residence and make other improvements on said lots, and accordingly Mrs. Buchanan, on August 9, 1893, executed the following deed to her husband, to wit:

"For the love and affection I have for my husband, Dr. C. Buchanan, and for the further consideration that the said C. Buchanan is putting valuable improvements upon the lot to be conveyed, I hereby give, transfer, and convey unto him, his heirs and assigns, a one-half interest in the following described property: [Here follows description.]

"To have, and to hold the one-half interest jointly with me in the above-described town lots, with the appurtenances thereunto belonging to the proper use and behalf of him, the said C. Buchanan, jointly with myself and as a tenant in common with me in the entire property, it being the property conveyed to me by my father, A. T. Hassel, on the 1st day of January, 1872, and recorded in Book M, page 306, in the register's office of Wayne county, Tennessee. I herby bind myself, my heirs and executors and administrators, to warrant and forever defend the title to the above-described town lots and each of them against the lawful claims of any and all persons or persons whatsoever, unto the said C. Buchanan and his said heirs and assigns forever."

The privy examination of Mrs. Buchanan was duly taken to the deed by the county court clerk of Wayne county.

Thereupon Dr. Buchanan made improvements on said place, including the erection of a handsome dwelling

at a cost of $3,500, and he and his wife occupied said dwelling continuously until her death in 1913.

Dr. and Mrs. Buchanan never had any children, but the defendant, Adyne Buchanan, a niece of Dr. Buchanan, was raised by Dr. and Mrs. Buchanan, and was living with her uncle, Dr. Buchanan, when this suit was instituted.

On March 31, 1915, Dr. Buchanan excuted to the defendant Adyne Buchanan, a warranty deed to said two lots for the consideration of $4,000, evidenced by deferred notes, none of which had been paid when this suit was brought.

On February 28, 1917, the bill was filed by the three sisters and heirs at law of Mrs. Buchanan against Adyne Buchanan seeking to eject her from said property, to recover rents, and to have the deed from Mrs. Buchanan to Dr. Buchanan, and the deed from Dr. Buchanan to the defendant, Adyne Buchanan, removed as clouds upon complainants' title.

The defendant, Adyne Buchanan, filed her answer as a cross-bill.

Dr. Buchanan was permitted to become a party defendant, and filed a petition as a cross-bill.

The complainants filed demurrers to said cross-bills, and, without undertaking to set out in detail these various pleadings, suffice it to say that the pleadings raise two questions that are determinative of the issues involved, viz.:

(1) Did the deed made by her father to Mrs. Buchanan vest in her a separate estate to the lots conveyed?

The chancellor so held, and it is from that holding the complainants appealed.

(2) Are the defendants under the facts set out in the answers and cross-bills and upon the equities asserted, entitled to recover for one-half of the enhanced value of the lots, by reason of the improvements placed thereon by C. Buchanan, or the entire enhancement in value, if the court should hold the deed to Mrs. Buchanan did not vest in her a separate estate?

, This latter proposition was denied by the chancellor, and from that part of the decree the defendants have appealed.

We are constrained to hold that the deed by which Mrs. Buchanan held this property did not vest in her a separate estate. To hold otherwise would result in overruling *Houston* v. *Embry*, 1 Sneed, 480, a decision of this court made sixty-five years ago, and which has been cited approvingly by this court as late as 1915 in the case of *Travis* v. *Sitz*, 135 Tenn., 157, 185 S. W., 1075, L. R. A., 1917A, 671.

The same learned argument which solicitor for cross-complainant made in this case was made by the solicitor for the plaintiff in error in the case of *Houston* v. *Embry*, supra, as appears from the brief of solicitor for plaintiff in error, which precedes the opinion in that case.

The language of the deed in *Houston* v. *Embry*, supra, was the same as the language in the case we are considering, and, in reference to the construction thereof, the court, on page 489, says:

"After an examination of all the authorities to which we have had access, we are of opinion that the words 'to the only proper use and behoof of her, the said Joanna, . . . her heirs or assigns forever,' are wholly insufficient to create a trust for the separate

use of the complainant. This is a set form of words taken from the complicated and redundant precedents of conveyancing formerly in use, which has long been regarded, even in England, as wholly useless; and in this country, under our simple forms of conveyance, as a mere unmeaning, useless form. The words are inappropriate to the purpose of creating a trust for the separate use of a married woman; and from their use, therefore, no inference of such an intention can be deduced. Words in themselves much more apt and significant have been held insufficient to give a separate estate.''

It is also said that *Houston* v. *Embry*, supra, is impliedly overruled by *Gray* v. *Robb*, 4 Heisk 74, but, by comparing the language of the deeds in the two cases and the reasoning of the court relative thereto, they are distinguishable and not in conflict. In *Gray* v. *Robb*, the case of *Houston* v. *Embry*, supra, was relied on by the defendants, and had the court considered the latter case in conflict with their holding, they would likely have specifically made announcement to that effect in their opinion.

As to the right of the defendants under their cross-bill to recover for one-half of the enhanced value of the lots by reason of the improvements placed thereon by C. Buchanan, we think the chancellor was correct in holding that no such recovery could be had.

Learned counsel for the defendants concede that, under our authorities, as a general proposition, a husband cannot recover for improvements made on his wife's property, but counsel takes the position that the case at bar is stronger in its equities and different as

to its facts from the cases relied upon by the complainants. But learned counsel has not cited the court to any authorities that would take this case out of the general rule, and we have been unable to find any such cases, and we do not see that this works any greater hardship than was suffered by the complainants in the cases of *O'Malley* v. *Coughlin,* 3 Tenn. Ch., 431, and *Sexton* v. *Alberti,* 10 Lea, 452. In *O'Malley* v. *Coughlin* the court said:

"It has long been settled, in this state, that the husband cannot, either by his own act or by contract, acquire or give a lien on his wife's land for improvements put thereon with her knowledge. The reason is that by an elementary principle of the common law, which has always been in force in this state, and which a court of equity cannot abrogate, the legal existence of the wife is merged in and incorporated with that of the husband, and she can therefore make no contract, give no consent, nor bind herself by acquiescence in regard to such improvements."

And in *Sexton* v. *Alberti* the court said:

"It would seem to follow, inevitably, if her contract for building the house was void, and her promise to pay for it equally a nullity, that no lien could arise from these acts by which her property could be in any way affected. Contracts which the party has no power to make cannot be the basis of legal obligation, nor could legal obligation grow out of such engagements, *ex contractu.* . . .

"The liability of the land to the lien would seem to be met by the fact that under our law she could only dispose of or convey it by conveyance in connection with her husband, and after privy examination before certain

·officers, as prescribed by our statutes. While a lien is not a right to land, nor an interest in land, as such, but a charge fixed upon it by law or contract, still it would seem an incongruity to hold that the wife could . . . indirectly contract for a result by which her land might be conveyed or disposed of, against her will, when she could not have done so directly, or except under prescribed forms, which have not been complied with.''

It results that the decree of the chancellor will be reversed, in so far as it holds that Mrs. Buchanan held the lots as a separate estate, and affirmed, in holding that cross-complainants cannot recover on account of improvements placed on the lots by Dr. Buchanan. The cross-bills of the defendants will be dismissed. The deed from Mrs. Buchanan to Dr. Buchanan, and the deed from Dr. Buchanan to Adyne Buchanan, will be removed as clouds, and the defendants will pay the costs of the appeal. The costs in the lower court will be paid as decreed by the chancellor. Writ of possession will issue to put the complainants into possession of said property.