**EDWARDS v. EDWARDS et al.**

No. 7694.

Court of Civil Appeals of Texas. Austin.

May 11, 1932.

Rehearing Denied June 8, 1932.

Thos. C. Ferguson, of Burnet, for appellant.

Lamar Thaxton, of Mason, and White, Taylor & Gardner, of Austin, for appellees.

McCLENDON, C. J.

Ivy C. Edwards sued Charlie and Mary A. Edwards in trespass to try title to recover a one-half undivided interest in 65 acres of land in Burnet county. Plaintiff's claim is predicated upon the hypothesis that the 65 acres were community property of A. H. Edwards and wife, Eliza T. Edwards. If so the one-half interest of the latter passed by inheritance to J. C. Edwards, the father of plaintiff and only heir at law of Eliza T. Edwards, and later by inheritance to plaintiff, the only heir at law of J. C. Edwards. Defendants' title is predicated upon a deed from A. H. Edwards and his third wife, Mary Edwards (mother of defendant Charlie Edwards), to Charlie Edwards on May 27, 1927; it being contended (1) that the 65 acres were the separate property of A. H. Edwards, and (2) that A. H. Edwards settled with J. C. Edwards for his interest in the community estate of his mother and father through conveyance by the latter to him in 1894 of 160 acres of land in Burnet county. The cause was tried to the court without a jury, and the judgment was for defendants. Plaintiff has appealed.

The record shows the following:

A. H. and Eliza T. Edwards were married August 11, 1869. March 5, 1870, the 65 acres were conveyed to A. H. Edwards for the recited consideration of $5 cash; the habendum clause of the deed reading: "To have and to hold all and singular the premises and hereditaments above mentioned and hereby and herein granted with the appurtenances hereto belonging, to the said party of the second part (A. H. Edwards), his heirs and assigns *to the only proper use and behoof of the said party of the second part and his heirs and assigns forever.*"

The emphasis is ours to indicate the language relied upon by appellees as fixing the status of the title as separate in A. H. Edwards.

Two other tracts in Burnet county of 50 and 40½ acres, respectively, were acquired by A. H. Edwards during the life of Eliza T. Edwards, who died December 8, 1875. These two tracts were admittedly community property. January 1, 1876, just twenty-three days after the death of Eliza T. Edwards, A. H. Edwards acquired 110 acres in Burnet county for the recited cash consideration of $421.50.

March 3, 1894, A. H. Edwards conveyed the 50 and 110 acre tracts to J. C. Edwards for the recited "consideration of $1 and "the love and affection I have for said J. C. Edwards, he being my beloved son." The evidence supports the trial court's finding that at the date of the conveyance this 160 acres was of greater value than the 65 and 40½ acre tracts. J. C. Edwards married in 1890, and shortly thereafter went into possession of the 160 acres and retained such possession until his death in 1912, since which time plaintiff has been in possession. A. H. Edwards retained possession of the other two tracts up to the time of his death, January 14, 1930. His third marriage was in 1891. The record shows nothing regarding the property of A. H. Edwards, community or otherwise, other than as evidenced by the above conveyance. Woods, a witness for defendants, and a neighbor of J. C. Edwards, testified to a number of conversations in which J. C. Edwards stated, in substance, that "he had received his part of his father's estate and his mother's estate." To quote further: "As to what he stated to me at the time I had these conversations with him in reference to whether or not at the time the deed was made to him that he had received his interest in his mother's estate from his father, he told me that 'Pap deeded him this 160 acres of land down there, and that he had received his interest in the estate.'"

This testimony was objected to on the ground that parol evidence was inadmissible to divest title to realty.

There are only two grounds upon which the trial court's judgment can be sustained, and we will therefore pretermit other questions raised in the briefs. These grounds are: (1) That the 65 acres were separate property of A. H. Edwards; and (2) that the conveyance of the 160 acres to J. C. Edwards was in consummation of a parol partition of the community estate of A. H. and Eliza T. Edwards.

The first ground is dependent upon a proper construction of the deed to A. H. Edwards in 1870 conveying the 65 acres. Unless the language there employed clearly evidences an intention to vest title in A. H. Edwards in his separate right, it must be held to have vested in the community under the general presumption that all property acquired by

onerous title during coverture is presumed to be community.

▮ The value of the land at the time of the conveyance is not shown; consequently there is no evidence that the recited consideration was merely nominal and that therefore the deed was one of gift. On its face the deed evidences only an onerous title.

The Texas case most nearly in point appears to be Stiles v. Japhet, 84 Tex. 91, 19 S. W. 450, 451, opinion by Judge Marr of the Commission of Appeals. There the deed was to the wife, and contained the words, "to her proper use, benefit, and behoof forever, in fee simple." This language was held not to create a separate estate in the wife upon the ground that it added nothing to the general language of the deed conveying title to the wife. It appeared that the records of Harris county, from 1852 to 1856, contained 1,538 deeds with similar phraseology.

In Nimmo v. Davis, 7 Tex. 26, the Supreme Court had under construction a trust instrument in which property was conveyed in trust for the "benefit" of the wife and children. The validity of a partition in Alabama was involved, and it was held that under the common law this language did not create a separate estate in the wife to the exclusion of the husband.

Under the common law, the exclusion of the husband was required to be expressed in clear and unequivocal language, some cases holding that it must be so expressed beyond a reasonable doubt. "Separate" was generally held to be a technical word and imported a separate estate, whereas "sole" was so held by some authorities and not so by others. The English cases upon the subject are collated in The Laws of England, by the Earl of Halsburg, vol. 16, p. 342 et seq. Since under the common law the wife had not the disposal of property to her use, the general rule was that, where the deed gave to the wife the right of disposal, it would be construed to exclude the husband. See Pritchard v. Ames, Eng. Rep. Reprint, vol. 37, p. 1083. This case was adverted to by the late Chief Justice Key of this court in Laufer v. Powell, 30 Tex. Civ. App. 604, 71 S. W. 549, 551 (error denied), in holding that a separate estate in the wife was created by the following language in a will: "To have and to hold and enjoy and dispose of the said land in any and every manner she may think proper for her own use [and] benefit."

The use of "only" as modifying "use" and/or "behoof" of the wife, is construed in some common-law jurisdictions to exclude the husband and in others not.

In Cuthbert v. Wolfe, 19 Ala. 373, the trust deed was "to and for the only use and bene-

fit" of a married woman. In holding that this language created a separate estate in the wife, the court say: "Mrs. Edwards was at the time of the assignment a married woman; the assignment conveyed the property to and for her only use and benefit. The language would not have excluded the husband more effectually, if it had been 'to her sole use and benefit.' If the latter had been the language, the husband would have been excluded according to various authorities.— Ayer v. Ayer, 16 Pick. [Mass.] 327; Anderson v. Brooks, 11 Ala. 953, and other cases cited by the counsel of the plaintiff in error."

The words "for her own use and benefit" were given a like interpretation in Ozley v. Ikelheimer, 26 Ala. 332.

The Supreme Court of Virginia, in Nixon v. Rose, 12 Grat. (53 Va.) 425, held that the following language created a separate estate: "To be held * * * in trust only for the use and benefit of my daughter Emily * * * [a married woman] or her heirs."

This, the court say, "though it seems that the intention to give her such an interest, in opposition to the legal rights of her husband, must be clear and unequivocal."

In Merrill v. Bullock, 105 Mass. 486, the language "in her own right," "not being in terms to her separate use in accordance with the St. of 1845, c. 208," was held not to exclude the husband.

The words "for her own proper use and behoof" were held not to exclude the husband in Edwards v. Burns, 26 Mo. App. 44, by the St. Louis Court of Appeals.

In Montague v. Buchanan, 141 Tenn. 432, 211 S. W. 211, 212, the Supreme Court of Tennessee held that a separate estate in a married woman was not created by the language, "to the only proper use and behalf of her," etc.

These decisions were all under the stringent rules of construction which the common law applied to such instruments. Upon this subject we quote Judge Wheeler in Nimmo v. Davis, above: "It is scarcely necessary to say, that the principles, applied in the interpretation of words employed in instruments conveying property to married women, in those Courts where marital rights are governed solely by the rules of the Common Law, would not be applicable to instruments of like import here. There, language is interpreted with great nicety, to sustain the marital rights of the husband. (2 Story, Com. Eq. Sec. 1383.) A claim to separate property, by the wife, is said to be against common right. ([O'Neil v. Teague] 8 Ala. 351.) Here the policy of the law, in respect to marital rights, and the respect which it pays to the wife's claim to separate property, are widely different. Those differences, however, do not claim our present attention.

The subject is adverted to, merely to prevent misapprehension as to the extent of the application of the principles to which the decision of the present case is referred."

In reaching the decision in that case, it was said that "there are no words expressive of an intention, that the bequest shall be for the exclusive use of the wife; and to constitute it such, as we have seen, that purpose 'must clearly appear, beyond any reasonable doubt; otherwise, the husband will retain his ordinary, legal, and marital rights over it.'"

■■ "Only" is "a word of restriction or exclusion, of restriction as to that which it qualifies, and of exclusion as to other things." 46 C. J. 1115. Although it has acquired no technical meaning in the law of conveyancing, yet, as we have seen, it has been construed by high authority in common-law states to have the same effect as "sole" (sometimes held to be a technical word) and "separate" (generally held to be a technical word). If given its ordinary meaning in the instrument before us, it "restricts" the use to the husband, and "excludes" the use of every one else including the wife. To construe the deed as vesting title in A. H. Edwards for the use of the community, the word "only" will have to be rejected, or the presumption indulged that it was carelessly or inadvertently inserted. We find nothing in the deed to warrant either alternative, and the general rule that every word in a deed or other written instrument must be given effect where not inconsistent with other language employed should apply. The word is presumed to have been used advisedly and for a purpose, absent any apparent intention to the contrary.

It is our view that the deed manifests an intention to convey a separate estate in the land to A. H. Edwards; but it is not necessary to rest our decision upon this holding.

The second ground in support of the judgment rests upon the testimony of Woods.

The objection to this testimony was, as stated, that it was inadmissible under the statute of frauds.

The trial court found that the conveyance was made as a settlement of C. J. Edwards' interest in his mother's estate and as an advancement. This was the effect of J. C. Edwards' statement as detailed by Woods, namely, that he had been settled with for his interest in his father's and mother's estate. We are not concerned with the question of advancement, since A. H. Edwards parted with the title to the 65 acres before his death, and his estate is not involved. But it may be noted that the quantity of land deeded to A. H. Edwards was largely in excess of the amount he was entitled to as his one-half of the community property,

even if all of the four tracts mentioned be regarded as community property.

■ Appellees contend, and the trial court held, that the 110 acres were community property. This contention and holding rests solely upon the fact that the tract was acquired for a cash consideration of $421.50 just twenty-three days after the death of Eliza Edwards. Absent any showing that there was any community property or funds from which this consideration might have been paid, we are not at liberty to indulge the presumption that it was so paid. The time (twenty-three days) it is true was quite brief between the death of Eliza Edwards and the conveyance. But that fact alone does not warrant the presumptions (1) that there existed community property or funds with which to pay the consideration; and (2) that the consideration was so paid. Spencer v. Pettit (Tex. Civ. App.) 268 S. W. 779, cited by appellees, is not in point. There a large community estate existed, and it was held that a community debt would be conclusively presumed to have been paid with community funds "in the absence of any evidence tending to show that the cattle (community) indebtedness was paid from some other source."

■■ The evidence of Woods was inadmissible to show a divestiture of title out of A. H. Edwards. But it has been repeatedly ruled in this state that a parol partition of real estate, coupled with possession by the respective cotenants, is valid; and the statement of J. C. Edwards (an admission against interest) that he had been settled with for his interest in his mother's estate, was evidence of a parol partition in which he received what he accepted as his share. Fifty acres of the land he received was community. That he received 110 acres additionally that was the separate property of the grantor could not, we think, invalidate the partition, except, perhaps, in a direct proceeding to set the partition aside and repartition the entire estate. As was said by Judge Denman in Moore v. Blagge, 91 Tex. 151, 38 S. W. 979, 41 S. W. 465, 466: "The fairness of a partition is a matter to be tested in some proceeding instituted for that purpose, and cannot be questioned in this action of trespass to try title."

It is not necessary to cite authority to the effect that the recitative statements of consideration in a deed may be varied or contradicted by parol evidence.

The trial court's judgment is affirmed.

Affirmed.

## On Appellant's Motion for Rehearing.

The motion contends that there is no pleading, trial court finding, or evidence to sustain the defense of verbal partition.

It was not necessary to plead a verbal partition, specifically. The general denial puts in issue any title appellees might show to defeat that asserted by appellant.

However, we regard the pleadings sufficient, independently of this holding. Appellees set up the conveyance from A. H. to J. C. Edwards, and plead that it was in full settlement of the latter's entire interest in his mother's estate. We have given the substance of the evidence upon this issue 'in our original opinion. The court's findings were in accordance with this pleading and evidence.

The exact point appellant makes is that this showing (pleading, evidence, and finding) is of a settlement and not a partition.

The law regards the substance of a transaction, and not the mere wording in which the parties have clothed their dealings. If A. H. Edwards conveyed to his son J. C. Edwards a portion of the community real estate in full settlement of the latter's interest in his mother's estate, and the conveyance was so accepted by J. C. Edwards, he going into possession of the community land conveyed to him and his father retaining possession of the remainder, the effect of the transaction was a partition of their respective interests in the community lands, it matters not by what term they designated it—settlement, payment, or what not.

" 'Settle' is said to be a word of equivocal meaning; and to mean different things in different connections, and that the particular sense in which it is used may be explained by the context or the surrounding circumstances. Accordingly the term may be employed as meaning to agree, to arrange, to ascertain, to come to or reach an agreement, to determine, to establish, to fix, to free from uncertainty, to place, or to regulate." 57 C. J. p. 526.

Where the legal title and possession of community real estate are in the father in trust for the community, a conveyance to the son of a portion of the real estate "in settlement of his interest in the estate" would be a partition; and, where this is the transaction, the terms "settlement" and "partition" may be used interchangeably. At any rate, in popular parlance, such a partition would be termed a settlement.

But appellant contends that, since he only got fifty acres of the community lands, the transaction cannot be upheld as an "equitable partition." As pointed out in our original opinion, we are not here concerned with the fairness of the partition. That issue, as held by Judge Denman in Moore v. Blagge, could only be litigated in a direct proceeding brought for that purpose. It was only necessary to show that each party accepted the portion allotted to him as his share in the whole, and that possession followed in accordance with the agreement or "settlement." And this agreement, as we have shown, is one that may be established by parol testimony.

The motion is overruled.

Overruled.