QUESTIONS: 1. Does the "charge off" by a state agency of an account receivable from a private party constitute a "settlement" of the account, as that term is used in s. 17.04, F. S.? 2. If question 1 is answered in the affirmative, are those agencies which are authorized by statute to "charge off" accounts required under the provisions of s. 17.04, F. S., to submit any proposed "charge off" to the Department of Banking and Finance for its subsequent and final approval?
SUMMARY: A charge off of an account or debt of a person indebted to the state is embraced within the provisions of s. 17.04, F. S., making it the duty of the Department of Banking and Finance to "examine, audit, adjust and settle the accounts of . . . any . . . person in anywise intrusted with, or who may have received any property, funds or moneys of this state, or who may be in anywise indebted or accountable to this state for any property, funds or moneys." Under s. 239.80, F. S. (1976 Supp.), and the rules of the State Board of Education, the Department of Education has the duty and authority to collect all delinquent unpaid and uncanceled scholarship loan notes and student loan agreements, to settle any such account, and to charge off such accounts which are delinquent at least 3 years, if for more than $25 or which are 6 months past due if for $25 or less and which prove uncollectible after good-faith collection efforts, and any such settlement or charge off of these specific types of accounts or debts need not be submitted to the Department of Banking and Finance pursuant to s.17.04 for its subsequent approval. Under s. 240.103, F. S., and the rules of the Board of Regents, the Board of Regents is directed to collect all delinquent accounts, such delinquent accounts consisting of the various fees and charges provided for in Ch. 240, F. S., and is authorized to charge off such accounts as may prove uncollectible, but is not authorized to settle any such account or debt in the sense of compromising such account or debt. "Charge offs" by the Board of Regents need not be submitted to the Department of Banking and Finance pursuant to s. 17.04. Under s. 402.17, F. S., the Department of Health and Rehabilitative Services is charged with the duty of protecting the state's financial interest with respect to claims which the state may have for the care and maintenance of patients or inmates of state institutions, and under s. 402.17(1), has the duty and authority to collect such claims, to settle such claims, and to charge off such claims which it determines to be uncollectible, and no such settlement or charge off need be submitted to the Department of Banking and Finance pursuant to the provisions of s.17.04. In charging off any such claim, concurrence by the Department of Legal Affairs is required. The Department of Education, the Board of Regents, and the Department of Health and Rehabilitative Services should submit a list of all such accounts or debts which have been settled or charged off to the Comptroller pursuant to s. 17.18, F. S., together with sufficient information or data as the Comptroller may require explaining the basis for such settlement or charge off to be included in the Comptroller's annual report to the Governor. AS TO QUESTION 1: It is common knowledge that for many years state agencies certified to the office of the Comptroller, Department of Banking and Finance, a list of accounts of persons indebted to the state through that state agency for collection or, in the event that collection was deemed to be impractical or useless because of the insolvency of the debtor or for whatever reason, for "charge off" by the office of the Comptroller, Department of Banking and Finance, pursuant to the provisions of s. 17.04, F. S. This administrative practice is longstanding. The procedure in the past has been that the certification of existing indebtedness may be instituted by either the involved state agency or the Auditor General, who may have discovered the indebtedness upon audit. Frequently, the state agency involved has made attempts to collect the indebtedness from the person involved and has been unsuccessful and is utilizing the provisions of s. 17.04 to "clear" or "write off" the account. Traditionally, s. 17.04 has been interpreted by the office of the Comptroller, Department of Banking and Finance, and all state agencies as embracing "charge off" in situations where total charge off or write off is justified. The language "shall examine, audit, adjust and settle" has been interpreted to embrace the term "charge off," such administrative interpretation being the long-standing policy and procedure of the state and its various agencies which normally would not be disturbed if reasonable and logical. See Kirk v. Western Contracting Corporation,216 So.2d 503, cert. den. 225 So.2d 535, appeal dismissed 226 So.2d 815. The purpose of s. 17.04, F. S., was to insure that every reasonable, diligent effort was made to effect collection of debts due the state and to insure that all persons accountable to the state for property, funds, or moneys be required to make proper payment or to yield up such property or funds. The administrative interpretation placed upon the statutes and the language therein, previously mentioned above, is entirely consistent with the purpose of the statute. The case of L. K. Ireland, etc., et al. v. J. B. Thomas, 324 So.2d 146, is an example of a situation where a shortage in the accounts of an officer was discovered by the Auditor General and referred to the Department of Banking and Finance for collection. However, there have been numerous occasions when an overpayment under the retirement system has resulted in matters being referred to the Department of Banking and Finance by the Department of Administration, Division of Retirement, for collection, settlement, or charge-off purposes in which the Auditor General was not involved. The term "charge off" is discussed in 6 Words and Phrases, beginning at p. 282. Cases cited therein indicate that a worthless debt has been "charged off" and therefore is deductible from income, when a taxpayer acting in good faith forms a mental determination, during the taxable year under circumstances showing the loss, to charge off the debt and that any act by a taxpayer manifesting an intent to eliminate an item from his assets is sufficient to constitute a "charge off" within the provisions of the Revenue Act of 1936 relating to bad debts. Also see "charge off," Black's Law Dictionary 295 (Rev'd. 4th Ed.), and The Random House Dictionary of the English Language, the unabridged ed., p. 248, defining the term to mean to write off as an expense or loss; and at p. 1648, defining "write off" as a cancellation from the accounts as a loss, an uncollectible account. Thus it would appear that, since the term is not defined in any of the statutes mentioned in your letter, it should be interpreted in light of the foregoing judicial and English dictionary definitions. For state accounting purposes, it would contemplate an act done on the part of the responsible fiscal officer whereby an existing debt was acknowledged as being uncollectible and an appropriate accounting entry made whereby the debt was eliminated or written off as an asset of the state. The terms "settle," "settlement," "settlement of account," and other related terms are discussed in 39 Words and Phrases, beginning at p. 37. At p. 38 therein, it is stated: "Settle" is said to be a word of equivocal meaning; and to mean different things in different connections, and that the particular sense in which it is used may be explained by the context or the surrounding circumstances. Accordingly, the term may be employed as meaning to agree, to arrange, to ascertain, to come to or reach an agreement, to determine, to establish, to fix, to free from uncertainty, to place, or to regulate. Edwards v. Edwards, Tex.Civ.App., 52 S.W.2d 657, 661. (Emphasis supplied.) Black's Law Dictionary, 4th edition, contains the same definition for the word "settle" at p. 1538. Additionally, it is stated therein at p. 1538 as follows: Parties are said to settle an account when they go over the items and ascertain and agree upon the balance due from one to the other. And, when the party indebted pays such balance, he is also said to settle it. M. Zimmerman Co. v. Goldberg, 69 Pa. Super. 254, 255; State Bank of Stratford v. Young, 159 Iowa, 375, 140 N.W. 376, 389. The terms "adjust," "settle," and "to settle" are discussed at p. 40 of Vol. 39 Words and Phrases. It is stated therein that the "settlement" is an act or process of adjusting or determining; that the words "adjust" and "settle" are synonyms; that the word "settle" when applied to an unliquidated claim or demand means a mutual adjustment between the parties and an agreement upon a balance; and that Webster defines "settle" as meaning, in law, to adjust; to liquidate; to balance as an account; to pay, as a debt. The word "settlement" is discussed at p. 42 thereof. It is stated therein that the word "settlement" in connection with public transactions and accounts is used to describe an administrative determination of the account due. Thus the language "adjust and settle" as used in s. 17.04, F. S., is broader than the term "charge off." A "charge off" would be embraced within the terms "adjust" and "settle," since a charge off would amount to a determination that an amount due was uncollectible so that such debt could be eliminated as an asset. The terms "to adjust" or "to settle" would also embrace situations wherein, by mutual agreement, the debtor and the Department of Banking and Finance agreed on the amount of the debt. The administrative interpretation heretofore mentioned is consistent with the various judicial and dictionary definitions of the aforementioned terms. Accordingly, a "charge off" of an account receivable from a private party would constitute adjusting or settling the account within the purview of s. 17.04, F. S. This answers question 1. AS TO QUESTION 2: Your inquiry refers to ss.17.04, 239.80(4), 240.103(2), and 402.17(1), F. S., and points out that all of said statutes deal with "settlement" or "charge offs" of delinquent and uncollectible accounts. You are concerned over the effect, if any, of the three last-mentioned statutes on the duties and functions of the office of the Comptroller and the Department of Banking and Finance under the first-mentioned statute, s. 17.04, F. S. Although not referred to in your letter, the organic duties and functions of the Comptroller under s. 4(d), Art. IV, State Const., must be considered. Section 4(d), Art. IV, supra, provides: (d) The comptroller shall serve as the chief fiscal officer of the state, and shall settle and approve accounts against the state. (Emphasis supplied.) The constitutional duty of the Comptroller to "settle and approve accounts against the state" is embodied in substance in s. 17.03(1), F. S. It should be noted that both the organic provision and s. 17.03(1) deal with settling and approving accounts against the state, as opposed to settling and approving accounts of those indebted to the state. The latter subject is covered in s. 17.04, F. S., which provides: The Department of Banking and Finance of this state shall examine, audit, adjust and settle the accounts of all the officers of this state, and any other person in anywise intrusted with, or who may have received any property, funds or moneys of this state, or who may be in anywise indebted or accountable to this state for any property, funds or moneys, and require such officer, or persons to render full accounts thereof, and to yield up such property or funds according to law, or pay such moneys into the treasury of this state, or to such officer or agent of the state as may be appointed to receive the same, and on failure so to do, to cause to be instituted and prosecuted proceedings, criminal or civil, at law or in equity, against such persons, according to law. (Emphasis supplied.) Compare s. 17.041, F. S., with respect to county and district accounts and claims and similarly providing; and s. 17.20, F. S., charging the several state attorneys with all claims placed in their hands for collection by the Department of Banking and Finance. Other pertinent provisions relating to the duty of the Comptroller to "examine, audit, adjust and settle the accounts" of persons indebted to the state include s. 17.05, F. S., which permits the Comptroller to "demand and require full answers on oath from any and every person, party or privy to any account, claim or demand . . . by the state" and s. 17.22, F. S., which deals with the procedure to be utilized by the Department of Banking and Finance in initiating or causing to be instituted legal action to effect collection of claims of the state. Also see s. 27.20, F. S., charging state attorneys with claims of the state placed in their hands by the Department of Banking and Finance. These various statutes and the procedures contained therein are of ancient vintage and are firmly embodied in the Florida fiscal system. These statutes must be reconciled with the statutes mentioned in your letter. Section 239.80(4), F. S. (1976 Supp.), referred to in your letter, became law through the enactment of Ch. 75-302, Laws of Florida, which provided in part that there be no new Florida student loans after June 30, 1975, and for the establishment of a short-term loan program. It also provided for the "collection, settlement, and charging off of delinquent . . . scholarship loan notes and student loan agreements." (See the title to Ch. 75-302, supra, and s. 14 thereof.) Section 14 is now embodied in s. 239.80, F. S. (1976 Supp.), and provides, in part: (1) The Department of Education is directed to exert every lawful and reasonable effort to collect all delinquent unpaid and uncanceled scholarship loan notes and student loan agreements. (2) The department is authorized to establish a recovery account into which unpaid and uncanceled scholarship loan note and student loan agreement accounts may be transferred. (3) The department is authorized to settle any delinquent unpaid and uncanceled scholarship loan notes and student loan agreements and to employ the service of a collection agency when deemed advisable in collecting delinquent accounts. However, no collection agency shall be paid a commission in excess of 35 percent of the amount collected. (4) The department is authorized to charge off unpaid and uncanceled scholarship loan notes and student loan agreements which are at least 3 years delinquent and which prove uncollectible after good-faith collection efforts. However, delinquent accounts with past due balances of $25 or less may be charged off as uncollectible when an account becomes 6 months past due and the cost of further collection effort or assignment to a collection agency would not be warranted. * * * * * (6) The State Board of Education shall adopt such rules as are necessary to regulate the collection, settlement, and charging off of delinquent unpaid and uncanceled scholarship loan notes and student loan agreements. (Emphasis supplied.) The provisions of the section must be reconciled with, read in conjunction with, or read in light of s. 17.04, F. S. Both sections deal with persons indebted to the state, and the collection, settling, or charging off of such indebtedness, but s. 239.80, supra, is a limited grant of authority to the Department of Education involving only delinquent and uncanceled scholarship loan notes and student loan agreements. Section 239.80(1) can be reconciled with s. 17.04, F. S., and other pertinent provisions of Ch. 17, F. S., since the Department of Education is directed therein to exert every "lawful and reasonable effort" to collect such accounts and since the procedure established in s. 17.04 is certainly a lawful means of effecting collection. Thus, the Department of Education could refer such delinquent and unpaid accounts to the Department of Banking and Finance for collection. The Department of Banking and Finance would then proceed as provided in s. 17.04 and could cause to be instituted and prosecuted appropriate legal proceedings. This is not inconsistent with the rules of the State Board of Education of Florida which have been promulgated implementing s. 239.80(1). (See Rule 6A-7.395.) Accordingly, s. 239.80(1) is not irreconcilable with, or repugnant to, s. 17.04. Assuming the account is determined to be uncollectible, in whole or in part, then the question arises as to whether the Department of Education or the Department of Banking and Finance would have the duty and authority to settle such account or to charge off such account, consisting of any delinquent unpaid and uncanceled scholarship note or student loan agreement. Subsections 239.80(3) and (4), F. S. (1976 Supp.), both place the duty and authority in the Department of Education for the specific type of delinquent and unpaid accounts mentioned therein. Thus, as to these specific types of accounts, s. 239.80(3), (4), and (5) is inconsistent with s. 17.04, F. S., dealing with the subject of settling accounts of persons indebted to the state generally and, being the later expression of the Legislature, would prevail to the extent of such inconsistency. (See 82 C.J.S., s. 290 et seq., and 82 C.J.S., ss. 363 and 369.) A special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms, and such statute relating to the particular part of a general subject will operate as an exception to or qualification of the general terms of a more comprehensive statute to the extent only of the repugnancy. (Adams v. Culver, Fla., 111 So.2d 665.) Both statutes deal with the duty and authority to settle accounts of persons indebted to the state, but s. 239.80(3), (4), and (5) deals with the specific types of accounts mentioned therein. Thus, the Department of Education has the duty and authority to settle any delinquent unpaid and uncanceled scholarship loan notes and student loan agreements, and to charge off any such accounts of more than $25 "which are at least 3 years delinquent and which prove uncollectible after good-faith collection efforts" and accounts of $25 or less after 6 months, in accordance with rules adopted by the State Board of Education regulating such matters. Thus, the duty and authority of the Department of Banking and Finance has been supplanted as to these specific types of accounts. The Department of Education has promulgated Rule 6A-7.395 implementing s. 239.80 F. S., establishing the procedure to be followed in settling or charging-off such accounts, including the procedure to be followed when commercial collection services are being utilized, and such rule and procedure are consistent with the conclusions reached herein. Thus, as to this specific type of account, the procedures and options available would appear to be as follows: Once the Department of Education had determined in accordance with the rules that a specific account covered by the statute was delinquent, unpaid, or uncanceled, it would be required to exert every lawful and reasonable effort to collect such account. Such account could be referred to the Department of Banking and Finance under s. 17.04, F. S., so that the department could initiate or cause to be instituted legal action under the provisions thereof to effect collection of the account. The Department of Education having made such a determination, as mentioned above, could employ the service of a collection agency when it deemed such action to be advisable for the purpose of collecting such delinquent accounts subject to the restriction contained in s. 236.80(3), F. S. (1976 Supp.), as to the amount of commission which could be paid such collection agency in accordance with Rule 6A- 7.395. Assuming that the Department of Education has employed such a collection agency, has referred the matter to the Department of Banking and Finance for collection efforts, or has otherwise failed to collect such account, it would be authorized to settle such account upon such terms and conditions and in such an amount as it deemed satisfactory, subject, of course, to the conditions that no fraud or collusion were involved and that the Department of Education had in good faith exhausted all collection efforts.
If the situation were such that the Department of Education determined in accordance with the statute and in conformity with its rule that it would be useless, impractical, or frivolous to make further attempts to collect such delinquent account, it is authorized to "charge of" or "write off" such account when such account is for more than $25 and is delinquent at least 3 years, or is for $25 or less and is 6 months past due, and has proven uncollectible after good-faith collection efforts, as authorized in s. 239.90(4), F. S. (1976 Supp.), and as prescribed and regulated by the rules of the Department of Education. In the event the Department of Education entered into a settlement of any such delinquent account or charged off such delinquent account as authorized in s. 239.80(3) and (4), F. S. (1976 Supp.), and the rules, such settlement or charge off is final and would not require subsequent approval of the Department of Banking and Finance under s. 17.04, F. S. The duty and authority to charge off or settle these specific types of accounts are reposed in the Department of Education to be exercised under rules adopted by the State Board of Education regulating the collection, settlement, and charging off of such accounts and not in the Department of Banking and Finance. The decision to settle, the decision to charge off, and the settlement would all be reviewable on postaudit by the Auditor General's office. However, a listing of all such accounts involving settlement or charge off should be forwarded to the Comptroller for inclusion in the annual report of the Comptroller to the Governor required by s. 17.18, F. S. Sufficient information should be given as to each specific account to allow the Comptroller to prepare the annual report so as to completely show the disposition thereof and so as to clearly demonstrate the collection efforts which had been made prior to either settling or charging off such account. This duty of the Comptroller under s. 17.18 has not been in any manner affected or altered by the provisions of s. 239.80 and is part and parcel of the Comptroller's duty as chief fiscal officer of the state. Reconciliation of the statutes in the manner described above results in the collection procedure set forth in s. 17.04, F. S., and elsewhere in Ch. 17, F. S., whereby criminal or civil proceedings may be instituted and prosecuted against such persons being available to the Department of Education and squarely recognizes the legislative intent to grant to the Department of Education the authority to settle and charge off, pursuant to rules adopted by the State Board of Education and pursuant to s. 239.80(4), F. S. (1976 Supp.), delinquent, unpaid, and uncanceled scholarship loan notes and student loan agreements. The authority given to the Department of Education and the State Board of Education is clear and unequivocal, and the Legislature did not specify that the settlement or charging off of any such delinquent account was conditioned upon the subsequent approval of the Department of Banking and Finance under s. 17.04. The Legislature has elected to place the authority and duty as to specific accounts in the Department of Education and the rulemaking power and duty to regulate the collection thereof in the State Board of Education. Although similar to s. 239.80, F. S. (1976 Supp.), s. 240.103, F. S., referred to in your letter, is not as broad. Section 240.103(1) contains the legislative mandate, "[t]he Board of Regents is directed to exert every effort to collect all delinquent accounts." Under s. 240.103(2), the Board of Regents "is authorized to charge off such accounts as may be uncollectible," (Emphasis supplied.) and, under s. 240.103(3), the Board of Regents "is authorized to employ the service of a collection agency when deemed advisable in collecting delinquent accounts." Significantly absent from s. 240.103 is any reference to the settling of such accounts. This language is present in ss.17.04 and 239.80. What has already been stated in regard to s. 239.80, F. S. (1976 Supp.), would be equally applicable to s. 240.103, F. S., with the exception that the absence of any specific authority to settle such delinquent accounts would require further consideration. As stated previously herein in answer to question 1, the term "settle" is broader than the term "charge off." Inasmuch as the Legislature has specifically recognized a distinction in these two terms in s. 239.80 and 240.103, supra, it must be presumed that the Legislature did not intend for the Board of Regents to have the authority to "settle" its delinquent accounts in the sense of compromising such claims. Also see AGO 060-90. Thus, adjustments or settlements, in that sense, of such accounts would still be required to be performed by the Department of Banking and Finance pursuant to s. 17.04, F. S., but the charge off of such accounts as may prove to be uncollectible is authorized in s. 240.103(2) to be performed by the Board of Regents, and such charge offs need not be submitted to the Department of Banking and Finance for subsequent and final approval. It should be noted, however, that the authority to "charge off" is accompanied by the duty to exert every effort to collect all delinquent accounts. Accordingly, no "charge off" could be accomplished until such time as the statutory duty had been fulfilled. However, in the sense that the term"settle" means to fix or determine the amount due and to require payment therefor, this duty to collect would embrace such action and would amount to settling the account. The Board of Regents adopted Rule 6C-10.07 implementing s. 240.103(2) pursuant to its rulemaking power found in s. 240.042(2)(a), F. S. Finally to be considered is s. 402.17(1), F. S., referred to in your letter. This statute quite clearly places in the Department of Health and Rehabilitative Services the duty to "protect the financial interests of the state with respect to claims which the state may have for the care and maintenance of patients or inmates of state institutions under its supervision and control." Section 402.17(1) specifically empowers said department to receive and supervise the collection of sums due the state; to bring any appropriate court action necessary to protect the interests of the state in order to collect any claim the state may have against any patient or inmate, former patient or inmate, or the guardian or administrator of any such patient or inmate or any person against whom any such patient or inmate may have a claim; to represent the state in the settlement of the estate of deceased patients or inmates or in the settlement of estates in which a patient or an inmate or a former patient or inmate against whom the state may have a claim has a financial interest; and to charge off such accounts as may prove uncollectible which have accrued with respect to claims which the state may have for the care and maintenance of patients or inmates of state institutions under their supervision and control. The procedure for charging off accounts provided for in s.402.17(1)(i) is that the head of the division concerned must certify such accounts as being uncollectible after diligent efforts have been made to collect them without success, and, upon concurrence by the Department of Legal Affairs, the accounts may be charged off. It is clear that the powers enumerated therein are as broad as or broader than the similar powers set forth in s. 239.80, F. S. (1976 Supp.). Thus, the conclusion reached pertaining to that statute would be equally applicable to s.402.17(1). Research reveals no rule adopted by the Department of Health and Rehabilitative Services implementing s. 402.17(1). This answers question 2.